## IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

**FILED**

**December 16, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

|  |  |  |
|---|---|---|
| **KIMBROUGH L. DUNLAP, JR.**, | ) | Haywood County Chancery Court |
|  | ) | No. 9593 |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9712-CH-00320 |
|  | ) |  |
| **PATRICIA CARTER DUNLAP**, | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |

_____

From the Chancery Court of Haywood County at Brownsville.
**Honorable George R. Ellis, Chancellor**

**Joel B. McLemore**, Murfreesboro, Tennessee
Attorney for Defendant/Appellant.

**L. L. Harrell, Jr.**, HARRELL & HARRELL, Trenton, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AS MODIFIED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

Defendant Patricia Carter Dunlap appeals, and Plaintiff Kimbrough L. Dunlap cross appeals, the trial court's final judgment distributing the parties' property in this divorce action. We affirm the trial court's judgment, with two modifications.

## I.  Procedural History

The parties' twenty-nine-year marriage ended on May 9, 1989, when the trial court entered a final divorce decree which incorporated the provisions of the parties' marital dissolution agreement (MDA). In April 1990, the Defendant filed a motion to alter, amend, or set aside the final divorce decree. The Defendant's motion indicated that it was being brought pursuant to rule 59 of the Tennessee Rules of Civil Procedure.  As grounds for setting aside the final decree, the Defendant's motion alleged that the Plaintiff had induced her to sign the MDA through fraud, duress, and undue influence.

The Plaintiff responded by filing a motion to dismiss in which he contended that the Defendant's rule 59 motion was untimely in that it was not filed and served within thirty days after the final divorce decree was entered. *See* T.R.C.P. 59.04.  Instead of dismissing the Defendant's motion, however, the trial court permitted her to amend her motion to state that she was proceeding under rule 60 of the Tennessee Rules of Civil Procedure instead of rule 59.  After conducting a hearing on the merits, the trial court granted in part and denied in part the Defendant's motion. The trial court refused to set aside that portion of the final decree which granted a divorce to the Plaintiff, and the court affirmed that the parties effectively were divorced as of May 9, 1989.  On the other hand, the trial court partially granted the Defendant's motion by setting aside the MDA which was incorporated into the final decree. The trial court then continued the proceedings for a determination of the equitable division of the parties' property.  The Plaintiff attempted to appeal the trial court's order setting aside the MDA, but this court denied his application for permission to appeal in May 1992. *See* T.R.A.P. 9.

The parties' legal maneuvers consumed the next two years of this litigation. Although not pertinent to this appeal, the various motions filed by the parties included (1) the Defendant's motion to enjoin the Plaintiff from disposing of the parties' jointly-owned property, (2) the

Defendant's notice that she was taking the Plaintiff's deposition, (3) the Plaintiff's motion to quash the notice, (4) the Defendant's motion to compel and for sanctions against the Plaintiff based upon his failure to produce documents requested through discovery, (5) the Defendant's motion *in limine* seeking to limit the Plaintiff's testimony and evidence to "his responses to questions posed in the depositions," (6) the Defendant's motion to conduct a pretrial conference and to set definite times for the completion of discovery and for a trial, (7) the Defendant's motion for the appointment of an appraiser to estimate the value of the Plaintiff's business, the Dunlap Insurance Agency, (8) the Plaintiff's motion to dissolve the restraining order which had been issued against him, and (9) the Defendant's second motion to take the Plaintiff's deposition and request for documents.

The trial finally took place on April 5, 1994. At the beginning of trial, the parties stipulated that the only issue before the court was the division of the property which the parties had acquired during their marriage. The parties indicated that the disputed real property included the marital home, a commercial building, a vacant lot, a 162-acre farm, an additional thirty-acre tract, a five-acre tract, and the Dunlap Insurance Agency. The parties did not dispute the values of these properties because they planned to have an appraiser evaluate the properties. In discussing the evaluation of the properties, however, the Defendant's attorney requested "that the evaluations be as of or as close to the date [of] the divorce as possible," May 9, 1989. The Defendant's attorney asked the trial court to exclude "any testimony past that date as to devaluation or expenditures."

The trial court did not issue its ruling immediately after the trial. In August 1994, per the parties' agreement, the trial court appointed an appraiser to determine the values of the properties in controversy. Sometime during the fall of 1994, the Defendant retained a different attorney to represent her in these proceedings. The Defendant's new attorney filed a motion for "interim relief" requesting, *inter alia,* a one-time payment for the rental value of the marital home since the divorce. In January 1995, the Defendant also filed a motion requesting the trial court to order that the marital home be sold and that the net proceeds be divided equally between the parties.

The trial court did not enter its judgment dividing the parties' property until 1997. The intervening two years of this litigation were filled with various filings by the parties, some at

the direction of the trial court, in which the parties outlined their respective positions as to the division of the parties' property, submitted proposed findings of fact and conclusions of law, and compiled lists of the assets to be divided by the court. In January 1997, the trial court entered an order in which it classified the parties' various properties as either marital or separate property. As pertinent to this appeal, the trial court found the following properties to be marital property subject to division: the marital home; the commercial building on 14th Avenue in Humboldt; and forty-nine percent (49%) of the Dunlap Insurance Agency. Additionally, the trial court found the following properties to be the Plaintiff's separate property: the Plaintiff's interests in the 162-acre farm and the thirty-acre tract, both of which he owned jointly with his brother. On February 3, 1997, the Plaintiff filed a motion asking the trial court to reconsider its order or, in the alternative, to grant him a new trial.

In March 1997, almost eight years after the parties were divorced and two months after the trial court entered its order classifying the parties' property, the Defendant filed a motion asking the Chancellor hearing the case to recuse himself from further participation in these proceedings. As grounds for recusal, the Defendant's motion averred that the Defendant and her counsel had filed complaints with the Court of the Judiciary "concerning the pace of this case" and, thus, that the Chancellor now was a party opponent to the Defendant and her counsel "in the related matter."

On April 10, 1997, the trial court entered an order which distributed the parties' property in accordance with the court's previous classifications of the various properties as either marital or separate. On May 1, 1997, the trial court entered an order denying the Defendant's March 1997 motion to recuse. The trial court also entered an order disposing of the Defendant's January 1995 motion for the sale of the marital home. The trial court's order ruled that

> the parties had heretofore agreed that the valuation of the property would be as of the date of the divorce and that either party may purchase same from the other party based upon said valuation less the amount of the indebtedness owing at the time of the divorce if this was agreeable to the opposing party. If this cannot be agreed upon by the parties, the property shall be sold.

On June 2, 1997, the Defendant filed a notice of appeal in the trial court. The notice was filed in this court on June 30, 1997. The Defendant's notice did not identify the order or orders being appealed. In November 1997, the Plaintiff filed a motion to dismiss the Defendant's appeal based upon her "failure to comply with the rules of appellate procedure." The Plaintiff's motion to dismiss was filed in the trial court rather than in this court. On December 11, 1997, the trial court entered an order which purported to grant the Plaintiff's motion and to dismiss the Defendant's appeal.

The Defendant filed a second notice of appeal on December 18, 1997. This time, the Defendant's notice of appeal identified the order being appealed as "the final judgment entered in this action on or around December 11, 1997." On appeal from the trial court's judgment, the Defendant contends that the trial court erred (1) in classifying the Plaintiff's interests in the 162-acre farm and the thirty-acre tract as separate property, (2) in granting the Plaintiff the exclusive use of the marital home from the date of the divorce until entry of the final judgment, and (3) in denying the Defendant's motion to recuse. The Plaintiff also has appealed, contending that the trial court erred (1) in permitting the Defendant to amend her motion to alter, amend, or set aside the final divorce decree so as to proceed under rule 60 rather than rule 59 of the Tennessee Rules of Civil Procedure, (2) in ruling that the commercial building on 14th Avenue in Humboldt and the Plaintiff's 49% interest in the Dunlap Insurance Agency constituted marital property subject to equitable distribution, and (3) in failing to allow the Plaintiff to purchase the marital residence at the appraised value less the indebtedness owing as of the date of the divorce.

## II. *Plaintiff's Motion to Dismiss Defendant's Appeal*

Before we address the issues raised by the parties on appeal, we first find it necessary to address the Plaintiff's contention that this court should grant his motion to dismiss the Defendant's appeal due to her failure to timely prosecute the appeal or to comply with the Tennessee Rules of Appellate Procedure. The Plaintiff has advanced several arguments in support of his motion to dismiss, including (1) that the trial court's April 10, 1997, order distributing the parties' property was the final order in this case and, thus, the Defendant's first notice of appeal filed June 2, 1997, was untimely; (2) that even if the May 1, 1997, orders entered by the trial court constituted the

final judgment, the Defendant's notice of appeal filed June 2, 1997, still was untimely; (3) that the Defendant's notice of appeal was further untimely because she did not file the notice with this court until June 30, 1997; and (4) that, in any event, the trial court dismissed the Defendant's first appeal by order entered December 11, 1997. The Plaintiff further argues that the issues in this appeal should be limited to those dealing with the trial court's December 11, 1997, order purporting to dismiss this appeal because that is the only order identified by either of the Defendant's notices of appeal.

We first reject the Plaintiff's argument that the trial court's April 10, 1997, order distributing the parties' property was a final order which the Defendant was required to appeal within thirty days of its entry. A final judgment is one which adjudicates all the claims, rights, and liabilities of all the parties. *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 328 (Tenn. 1982); *Woods v. Fields*, 798 S.W.2d 239, 241 (Tenn. App. 1990); T.R.A.P. 3(a). At the time the trial court entered its April 10, 1997, order distributing the parties' property, at least two issues in this case remained unresolved: the Defendant's January 30, 1995, motion to order the sale of the marital home and the Defendant's March 17, 1997, motion for the trial court to recuse itself. The trial court did not dispose of these motions until it entered its orders of May 1, 1997. Accordingly, the April 10, 1997, order was not a final judgment appealable as of right. *See Woods v. Fields*, 798 S.W.2d at 241; *see also Solomon v. First Am. Nat'l Bank*, 774 S.W.2d 935, 939 (Tenn. App. 1989).

We also reject the Plaintiff's contention that the Defendant's notice of appeal was untimely. In an appeal as of right, the appellant is required to file a notice of appeal with the clerk of the trial court within thirty days after the date of entry of the judgment appealed. *See* T.R.A.P. 4(a). In computing this thirty-day time period, this court does not include the date on which the judgment was entered. *See* T.R.A.P. 21(a). Moreover, if the last day of the thirty-day time period falls on a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is closed, then this day is not included in the thirty-day time period. *Id*. In that event, "the period runs until the end of the next day which is not a Saturday, a Sunday, a legal holiday, or a day when the clerk's office for filing is closed." *Id*.

In the present case, the trial court's final judgment was entered on May 1, 1997. If

we do not include this date in our computation, then the thirtieth day fell on Saturday, May 31, 1997. Since this date was a Saturday, the Defendant was allowed until Monday, June 2, 1997, within which to file her notice of appeal. *See State v. Sims*, 626 S.W.2d 3, 4 (Tenn. 1981); *see also McDowell v. State*, 1991 WL 139727, at *2 n.1 (Tenn. Crim. App. July 31, 1991). Inasmuch as June 2, 1997, was the date on which the Defendant, in fact, filed her notice of appeal, we conclude that the notice was timely.

At the time the Plaintiff filed her notice of appeal, rule 5(a) of the Tennessee Rules of Appellate Procedure required her to serve a copy of the notice on the clerk of this court not later than seven days after filing the notice of appeal. Specifically, rule 5(a) provided that, "[n]ot later than *7 days* after filing notice of appeal, the appellant in a civil action shall serve a copy of the notice of appeal on counsel of record of each party or, if a party is not represented by counsel, on the party, *and on the clerk of the appellate court* designated in the notice of appeal." T.R.A.P. 5(a) (emphases added). Although the Plaintiff timely filed her notice of appeal with the clerk of the trial court on June 2, 1997, the Plaintiff did not serve a copy of the notice of appeal on the clerk of this court until twenty-eight days later, June 30, 1997. Nevertheless, we reject the Plaintiff's argument that the Defendant's appeal should be dismissed because she failed to timely serve a copy of the notice of appeal on the clerk of this court.

This argument recently was rejected by our supreme court in *Cobb v. Beier*, 944 S.W.2d 343 (Tenn. 1997). In that case, the court outlined the history of rule 5 of the Tennessee Rules of Appellate Procedure and noted that the requirement of service on the clerk of the appellate court had "been in a state of flux since 1979." *Cobb v. Beier*, 944 S.W.2d at 344. The court explained:

> When the appellate rules were established effective July 1, 1979, service of a copy of the notice of appeal was required by appellant or appellant's counsel on (1) counsel and on (2) the clerk of the appellate court. . . . In 1984, however, the requirement of service on the clerk of the appellate court was deleted from Rule 5(a) and (b), . . . .
>
> In 1991, T.R.A.P. 5(a) was again amended, restoring subsection (a) to its original tenor, requiring appellant or appellant's counsel to serve the appellate court clerk with a copy of the notice of appeal. . . .

In 1997, based on the recommendation of the Advisory Commission, we again amended Rule 5(a) and (b) to place upon the trial court clerk, rather than the appellant or appellant's counsel, the responsibility of serving a copy of the notice of appeal upon the clerk of the appellate court.

*Cobb v. Beier*, 944 S.W.2d at 344-45 (footnotes omitted).

In refusing to dismiss the appeal based on the appellant's failure to timely serve a copy of the notice of appeal on the appellate court clerk, the supreme court reasoned:

We find no prejudice to the appellee or to the appellate process resulting from appellant's failure to serve a copy of the notice of appeal upon the clerk of the appellate court. As we recently observed in *Johnson v. Hardin*, 926 S.W.2d 236, 238 (Tenn. 1996):

The general policy of the rules, as suggested by the Advisory Commission and interpreted by the courts, emphasizes reaching a just result and disregarding technicality in form. . . . Consequently, once a timely notice of appeal is filed, the rules should not erect unjustified technical barriers which prevent consideration of the merits of the appeal . . . . the overall intent of the rules is to allow cases to be resolved on their merits. A court's construction and application of the rules should further that intent and should enhance, not impede, the search for justice.

In addition, our 1997 amendment is more in line with the Federal Rule and places the service requirement on the trial court clerk. Since the service requirements of Rule 5 do not, in any way, affect the timeliness of the appeal, as does Rule 4, the failure of the clerk to strictly comply with the service requirement does not defeat the validity of an appeal.

The notice of appeal document in civil cases filed in the appellate court serves no significant substantive purpose because the clerk of the appellate court does not docket the appeal until the record is received. At that time the clerk serves "notice on all parties of the receipt of the record and docketing of the appeal." Rule 5(c), T.R.A.P. Thus, it is exalting form over substance to dismiss an appeal on the sole basis that counsel failed to serve a copy of the notice of appeal on the appellate court clerk.

We are therefore of the opinion that this case, and all cases presently on appeal in which the clerk of the appellate court was not timely served a copy of the notice of appeal, should ***not*** be dismissed for failure to comply with Rule 5(a), T.R.A.P. To hold otherwise would impede the search for justice.

*Cobb v. Beier*, 944 S.W.2d at 345-46.

We recognize that the notice of appeal in the present case was filed June 2, 1997, and, thus, this appeal was not pending when the supreme court decided *Cobb v. Beier* on April 28, 1997. In fact, the notice of appeal filed in the present case appears to fall within the narrow category of appeals which were filed after the supreme court decided *Cobb v. Beier* on April 28, 1997, but before the supreme court's amendment to rule 5(a) became effective on July 1, 1997. *Cobb v. Beier*, 944 S.W.2d at 345 n.6; T.R.A.P. 5. Nevertheless, we conclude that the rationale of *Cobb v. Beier* applies equally well to the present case, and we decline to dismiss the Defendant's appeal based solely on her failure to timely serve a copy of the notice of appeal on the clerk of this court.

Finally, we reject the Plaintiff's arguments that the Defendant's first appeal effectively was dismissed by the trial court's order entered December 11, 1997, and that the Defendant's current appeal is limited to a review of the trial court's order dismissing her first appeal. This court's jurisdiction attaches upon the filing of the notice of appeal, and only the appropriate appellate court has the authority to entertain and dispose of a motion to dismiss an appeal. *State v. Peak*, 823 S.W.2d 228, 229-30 (Tenn. Crim. App. 1991) (citing T.R.A.P. 3(e), 4(a)); *Muesing v. Ferdowsi*, No. 01A01-9005-CV-00156, 1991 WL 20403, at **1-2 (Tenn. App. Feb. 21, 1991) (citing T.R.A.P. 4(a), 4(b)). This rule applies whether the motion to dismiss is based upon an alleged defect in the notice of appeal, the appellant's failure to timely file a transcript or statement of evidence, or the appellant's failure to timely file his brief. *State v. Peak*, 823 S.W.2d at 229 (citing T.R.A.P. 3(e), 24(b), 24(c)); *Muesing v. Ferdowsi*, 1991 WL 20403, at **1-2 n.2 (citing T.R.A.P. 26(b), 29(c)). Accordingly, the trial court in this case did not have the authority to dismiss the Defendant's appeal.

Inasmuch as this appeal never was dismissed, we review the Defendant's appeal pursuant to her first notice of appeal, which we have concluded was timely filed on June 2, 1997. We observe that the Defendant's first notice failed to identify the order or orders being appealed. Rule 3(f) of the Tennessee Rules of Appellate Procedure specifically requires that a party's notice of appeal designate the judgment from which relief is sought. *See* T.R.A.P. 3(f). Nevertheless, we conclude that the Defendant's failure to comply with rule 3(f) does not preclude this court from reviewing the issues raised by the Defendant in her appellate brief.

As a general rule, a party to an appeal may present any question of law for this court's

review. Rule 13(a) governs this court's scope of review and provides that, "[e]xcept as otherwise provided in Rule 3(e)[addressing waiver of certain issues in jury trials], any question of law may be brought up for review and relief by any party." T.R.A.P. 13(a). In its comment on rule 13(a), the advisory commission explained that

> this subdivision rejects use of the notice of appeal as a review-limiting device. In federal practice the notice of appeal has limited review in two principal ways. Some courts have limited the questions an appellant may urge on review to those affecting the portion of the judgment specified in the notice of appeal. However, since the principal utility of the notice of appeal is simply to indicate a party's intention to take an appeal, this limitation seems undesirable. The federal courts have also limited the issues an appellee may raise on appeal in the absence of the appellee's own notice of appeal. Here again, since neither the issues presented for review nor the arguments in support of those issues are set forth in the notice of appeal, there seems to be no good reason for so limiting the questions an appellee may urge on review. The result of eliminating any requirement that an appellee file the appellee's own notice of appeal is that once any party files a notice of appeal the appellate court may consider the case as a whole.

T.R.A.P. 13(a) advisory commission's comment.

In examining the relationship between rule 13(a) and rule 3(f), this court has held that a party's failure to comply with rule 3(f) does not limit the issues which that party may raise on appeal. *Glidden v. Glidden*, 1987 WL 9452, at \*\*1-2 (Tenn. App. Apr. 16, 1987); *see also Anderson v. Standard Register Co.*, No. 01A01-9102-CV-00035, 1992 WL 63421, at \*\*2-3 (Tenn. App. Apr. 1, 1992), *aff'd*, 857 S.W.2d 555 (Tenn. 1993). Quoting the advisory commission's comment to rule 3(f), we explained that, although rule 3(f) specifies the content of the notice of appeal,

> [t]he purpose of the notice of appeal is simply to declare in a formal way an intention to appeal. As long as this purpose is met, it is irrelevant that the paper filed is deficient in some other respect. Similarly, the notice of appeal plays no part in defining the scope of appellate review. Scope of review is treated in Rule 13. This subdivision read in conjunction with Rule 13(a) permits any question of law to be brought up for review [except as otherwise provided in Rule 3(e)] as long as any party formally declares an intention to appeal in timely fashion.

*Glidden v. Glidden*, 1987 WL 9452, at *1 (quoting T.R.A.P. 3(f) advisory commission's comment); *see also Anderson v. Standard Register Co.*, 1992 WL 63421, at *2.

In accordance with these authorities, we conclude that, despite her failure to identify the judgment or judgments being appealed in her June 2, 1997, notice of appeal, the Defendant should be permitted to present any question of law or fact involved in this case for this court's review. *See Glidden v. Glidden*, 1987 WL 9452, at *2. We further observe that, while it would have been prudent for the Defendant to identify the appropriate judgments in her notice of appeal, this oversight has not prejudiced the Plaintiff in any way and has not otherwise hampered our review of this appeal. *See Anderson v. Standard Register Co.*, 1992 WL 63421, at *3.

### *III. Defendant's Motion to Set Aside May 9, 1989, Divorce Decree*

As his first issue on cross-appeal, the Plaintiff appeals the trial court's order setting aside the May 9, 1989, divorce decree pursuant to rule 60 of the Tennessee Rules of Civil Procedure. Specifically, the Plaintiff contends that the Defendant's motion to alter or amend the divorce decree was not timely filed and that the trial court erred in allowing the Defendant to amend her motion so as to proceed under rule 60 instead of rule 59.

We conclude that these arguments are without merit. Rule 59 of the Tennessee Rules of Civil Procedure, entitled "New Trials and Alteration or Amendment of Judgments," permits the trial court to alter or amend a judgment on its own initiative if the court does so within thirty days after entry of the judgment. *See* T.R.C.P. 59.05. Rule 59 also permits the trial court to alter or amend a judgment upon motion of one of the parties, provided such motion is filed within thirty days after entry of the judgment. *See* T.R.C.P. 59.04

In contrast, rule 60, entitled "Relief from Judgments or Orders," does not impose a thirty-day time limitation upon the court or the parties. Rule 60 permits the trial court, "at any time on its own initiative or on motion of any party," to correct judgments and orders containing clerical mistakes or errors of oversight or omission. T.R.C.P. 60.01. Rule 60 further permits the trial court, when presented with an appropriate motion, to relieve a party from a final judgment or order for five

enumerated reasons:

      (1)      mistake, inadvertence, surprise or excusable neglect;

      (2)      fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

      (3)      the judgment is void;

      (4)      the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or

      (5)      any other reason justifying relief from the operation of the judgment.

T.R.C.P. 60.02. Rule 60.02 requires that a motion filed thereunder "be made within a reasonable time." *Id*. Where a rule 60.02 motion is filed for reasons (1) or (2), however, the party seeking relief must file the motion within one year after the judgment or order was entered. *Id*.

In the present case, the final divorce decree was entered by the trial court on May 9, 1989. On April 19, 1990, less than one year after entry of the divorce decree, the Defendant filed her motion to alter, amend, or set aside the decree. The Defendant's asserted reasons for seeking relief from the decree included, *inter alia*, fraud and other misconduct by the Plaintiff. We conclude, therefore, that the grounds for relief asserted in the Defendant's motion brought the motion within the ambit of rule 60.02(2) and, further, that the motion was timely filed within one year after entry of the divorce decree.

We also reject the Plaintiff's argument that the trial court erred in permitting the Defendant to amend her motion so as to proceed under rule 60 rather than rule 59. The law is well-settled that, in ruling on post-trial motions filed by the parties, the courts of this state are required to consider the substance of the motion rather than its form or title. *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998); *Parker v. Vanderbilt Univ.*, 767 S.W.2d 412, 421 n.1 (Tenn. App. 1988); *Thigpen v. First City Bank*, No. 01A01-9603-CV-00095, 1997 WL 351247, at \*2 (Tenn. App. June 27, 1997). The Defendant's motion clearly requested, among other relief, that the divorce decree be set aside on the grounds of fraud and misconduct. Inasmuch as the

substance of the Defendant's motion was a request for relief pursuant to rule 60.02(2), we conclude that the trial court properly treated the Defendant's motion as a rule 60 motion to set aside the decree.

In so holding, we note that, on several occasions, this court has held that it is appropriate for courts to treat a motion which incorrectly cites rule 60 as a motion to alter or amend under rule 59. *See Thigpen v. First City Bank*, 1997 WL 351247, at *2; *see also Wachovia Bank Card Servs. v. Overton*, No. 03A01-9510-CV-00373, 1996 WL 64004, at *1 n.1 (Tenn. App. Feb. 15, 1996); *Humphrey v. O'Conner*, No. 01A01-9502-PB-0006, 1995 WL 428679, at *7 (Tenn. App. July 21, 1995), *perm. app. denied* (Tenn. Nov. 20, 1995). The present case is merely the converse of that situation.

### IV. Defendant's Motion to Recuse Chancellor

As one of her three issues on appeal, the Defendant contends that the trial court erred in denying her motion for the court to recuse itself. In March 1997, after this divorce proceeding had been pending for almost eight years and after the trial court had entered its order classifying the parties' property, the Defendant filed a motion asking the Chancellor to recuse himself from further participation in the case. The Defendant's motion to recuse asserted the following grounds:

> Based on information and belief, the court is doubtless aware that both the defendant and her counsel have filed complaints with the Court of the Judiciary concerning the pace of this case. As the Chancellor is now a party opponent to the defendant and to her counsel in the related matter, the Chancellor is respectfully asked to withdraw from this case.

The trial court denied the Defendant's motion to recuse, ruling, *inter alia*, that "the mere filing of a complaint with the Court of the Judiciary should not operate to disqualify a judge from hearing a case." The court reasoned that such a situation "would result in forum shopping which could severely hamper the efforts to administer justice" and, further, that "to bring in a [different] judge would cause unnecessary expenses and delay."

We conclude that the trial court acted well within its discretion when it refused to recuse itself based upon the grounds asserted in the Defendant's motion. This court and the Court of Criminal Appeals both have held that a trial judge is not required to recuse himself merely because the moving party has filed a complaint against the judge with the Court of the Judiciary. In *Ellison v. Alley*, 902 S.W.2d 415 (Tenn. App. 1995), for example, the defendants contended that the chancellor erred in denying their motion for recusal where one of the defendants had filed a complaint against the chancellor with the Court of the Judiciary. The basis of the defendant's complaint was that the chancellor had made "multiple and significant" factual and legal errors in deciding the case. *Id*. at 418. In moving for the chancellor's recusal, the defendants subsequently argued that, due to the filing of the complaint with the Court of the Judiciary, disqualification was warranted because the chancellor "would likely be biased against" the defendant who had filed the complaint. *Id*. Affirming the chancellor's denial of the motion for recusal, this court held that

> we find no error in this action. The motion and affidavit -- with their "would likely be biased against" [the defendants] language -- are not sufficient to make out a case for recusal. "The determination of whether to recuse oneself rests within the sound discretion of the trial judge." *State v. Galloway*, 696 S.W.2d 364, 367 (Tenn. Cr. App. 1985). We find no abuse of discretion in this case. We note, moreover, that "[a] motion to recuse may not be used for the purpose of judge or forum shopping." *U.S. v. Baker*, 441 F. Supp. 612, 615 (M.D. Tenn. 1977).

*Ellison v. Alley*, 902 S.W.2d at 418 (footnote omitted).

The Court of Criminal Appeals affirmed the denial of a similar motion to recuse in *State v. Parton*, 817 S.W.2d 28 (Tenn. Crim. App. 1991). In that case, the defendant moved for the trial judge's recusal on the ground that the defendant had filed a grievance against the judge with the Court of the Judiciary and the Tennessee Supreme Court. *Id*. at 29-30. The defendant's grievance was based on allegations that the trial judge could not be impartial in that the judge had demonstrated a "bad attitude" toward the defendant in prior proceedings and always had imposed the maximum sentence against him. *Id*. at 30. Despite these allegations, the trial judge denied the defendant's motion for recusal, and the Court of Criminal Appeals affirmed. Citing rule 10 of the Tennessee Supreme Court Rules and, specifically, canon 3(C), which requires a judge to disqualify himself when his impartiality might reasonably be questioned, the court reasoned:

> The determination by a trial judge of whether he should disqualify himself from sitting in a case is a matter of sound discretion with the court. *Wiseman v. Spaulding*, 573 S.W.2d 490 (Tenn. App. 1978).
>
> We have scrutinized this record thoroughly. There is no evidence that the trial judge had any personal bias or prejudice against [this defendant]. No evidence exists that the court violated any provisions of Canon 3. The trial judge was well within his discretion to refuse to recuse himself.

*State v. Parton*, 817 S.W.2d at 30.

In accordance with the foregoing authorities, we hold that the trial court did not err in denying the Defendant's motion to recuse where the sole basis for the motion was that the Defendant and her counsel had filed complaints against the Chancellor with the Court of the Judiciary. At the time the Defendant filed her motion, these proceedings had been pending for almost eight years, and the trial court already had announced its rulings on most of the significant issues in this divorce action, including the classification of the parties' various properties as either marital or separate property. We agree with the trial court that to grant the Defendant's motion at this point in the proceedings would encourage judge or forum shopping. We also note that the trial court determined many of the significant issues in this lawsuit in the Defendant's favor, and the record reveals no evidence that the Chancellor had any personal bias or prejudice against the Defendant. Under these circumstances, we conclude that the trial court acted within its discretion in denying the motion for recusal.

### V. Trial Court's Ruling that 162-Acre Farm and Thirty-Acre Tract Constituted Plaintiff's Separate Property

On appeal, the Defendant also contends that the trial court erred in ruling that the 162-acre farm and the thirty-acre tract of land constituted the Plaintiff's separate property because these properties were acquired during the parties' marriage and, thus, constituted marital property. The Plaintiff, on the other hand, contends that the trial court properly classified these assets as his separate property because they were gifts to the Plaintiff from his father.

Before dividing the marital estate in a divorce proceeding, the trial court first must

classify the parties' property as either marital or separate property because only marital property is subject to the trial court's powers of equitable distribution. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. App. 1995); *Brown v. Brown*, 913 S.W.2d 163, 166 (Tenn. App. 1994); *accord Burns v. Burns*, No. 01A01-9705-CH-00218, 1997 WL 691533, at *2 (Tenn. App. Nov. 7, 1997). In classifying the parties' property as either marital or separate, the trial court is vested with wide discretion, and its decision is entitled to great weight on appeal. *Harris v. Corley*, No. 01A01-9011-CH-00415, 1991 WL 66447, at *5 (Tenn. App. May 1, 1991) (citing *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. App. 1973)). In accordance with rule 13(d) of the Tennessee Rules of Appellate Procedure, the trial court's classification and division of marital property enjoys a presumption of correctness and will be reversed or modified only if the evidence preponderates against the court's decision. *Harris v. Corley*, 1991 WL 66447, at *5 (citing *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. App. 1984); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. App. 1983)); *accord Goren v. Goren*, 1988 WL 118114, at *3 (Tenn. App. Nov. 7, 1988).

The equitable distribution statute defines marital property as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage." T.C.A. § 36-4-121(b)(1)(A) (1996). Under this definition, the 162-acre farm and the thirty-acre tract presumptively would be classified as marital property because the undisputed evidence showed that both were acquired by the Plaintiff during the marriage. *See McClellan v. McClellan*, 873 S.W.2d 350, 351 (Tenn. App. 1993); *Barnhill v. Barnhill*, 826 S.W.2d 443, 452 (Tenn. App. 1991); *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. App. 1988).

Despite the fact that certain property may have been acquired during the marriage, a party may rebut any presumption that the property is marital by demonstrating that the property actually was a gift to that spouse alone. A spouse's separate property includes property acquired "*at any time* by gift, bequest, devise or descent." T.C.A. § 36-4-121(b)(2)(D) (1996) (emphasis added). Accordingly, if the spouse can show that the property was a gift, the gift is his or her separate property, regardless of when it was acquired.

In a divorce case, as in other cases, the burden of proving that a gift was made is upon

the donee or the party asserting the gift. *Hansel v. Hansel*, 939 S.W.2d 110, 112 (Tenn. App. 1996); *Hartman v. Hartman*, No. 03A01-9608-CV-00249, 1997 WL 176701, at *2 (Tenn. App. Apr. 10, 1997). In the present case, therefore, the Plaintiff had the burden of proving that the 162-acre farm and the thirty-acre tract were gifts from his father. In order to meet this burden, the Plaintiff was required to establish the formal requirements of intent coupled with delivery. *Hansel v. Hansel*, 939 S.W.2d at 112. That is, the Plaintiff was required to demonstrate (1) "the intention by the donor to make a present gift," coupled with (2) "the delivery of the subject of the gift by which complete dominion and control of the property [was] surrendered by the donor." *Id*.

With this standard in mind, we examine the evidence which was presented by the Plaintiff in support of his contention that the 162-acre farm and the thirty-acre tract were gifts. The farm had been in the Plaintiff's family since the 1800's. In December 1972, the Plaintiff's parents executed a warranty deed conveying the farm to the Plaintiff and the Plaintiff's brother, Warner B. Dunlap, as tenants in common. On the warranty deed, the Plaintiff's father, Kimbrough L. Dunlap, Sr., represented that the actual consideration for the transfer, or the value of the property transferred, whichever was greater, was $42,000. The Plaintiff acknowledged that in June 1973 he and the Defendant, along with the Plaintiff's brother and his wife, signed a demand note for $40,000 which was secured by a deed of trust on the farm property. The Plaintiff testified, however, that he paid no consideration for the land and that his father never made any demand on the note.

After carefully reviewing the Plaintiff's testimony on this issue, we conclude that the evidence preponderates against the trial court's finding that the 162-acre farm was a gift to the Plaintiff alone. Although the Plaintiff testified that he paid no consideration for the land and that his father never required him to pay the demand note, there was no evidence that the father had the present intent to make a gift at the time he conveyed the farm to the Plaintiff and his brother. Moreover, the Plaintiff's testimony failed to explain why, if the farm was a gift to the Plaintiff and his brother alone, the Defendant also signed the $40,000 demand note which was secured by a deed of trust on the farm. The Plaintiff's claim of a gift appeared to be based on his testimony that, at some point after the conveyance, his father decided to make a gift of the farm by forgiving the indebtedness on the farm. Even if the Plaintiff's father at some point in time forgave the debt, however, this resulted in a gift to both the Plaintiff and the Defendant, not just the Plaintiff, because

both signed the demand note. Under these circumstances, we conclude that the Plaintiff's interest in the farm constituted marital property subject to division by the trial court.

We reach a different result with regard to the thirty-acre tract of land. The Plaintiff and his brother acquired this tract from a third party in June 1970. The warranty deed represented that the consideration for the transfer, or the value of the property, whichever was greater, was $6000. The Plaintiff testified, however, that his father paid the purchase price for the property and made a gift of the property to the Plaintiff and his brother. If accepted as true by the trial court, this testimony established that the thirty-acre tract was a gift to the Plaintiff and, thus, constituted his separate property. The evidence showed that the Plaintiff's father had the present intent to give the property to the Plaintiff and that the subject of the gift was in fact delivered to the Plaintiff.

## VI. *Trial Court's Ruling that Commercial Building and Portion of Insurance Agency Constituted Marital Property*

On cross-appeal, the Plaintiff contends that the trial court improperly classified a 49% interest in the Dunlap Insurance Agency and the 14th Avenue commercial building as marital property because these properties also were gifts from the Plaintiff's father. During the marriage, the Plaintiff acquired a 49% interest in the Dunlap Insurance Agency, which was owned by the Plaintiff's father. The Plaintiff acquired this interest after he began working for the insurance agency in 1968. The Plaintiff signed a note indicating that he was purchasing the 49% interest for the sum of $12,000. The Plaintiff testified, however, that he never paid this note. The last will and testament of the Plaintiff's father recited that the father never received any monetary consideration for the sale of the 49% interest in the business and that the father was forgiving the debt. The will bequeathed the remaining 51% interest in the agency to the Plaintiff, but this interest is not at issue in this appeal.

On appeal, the Plaintiff concedes that the 49% interest in the Dunlap Insurance Agency was given to him in consideration for going to work with his father in the agency, but he insists that the interest was a gift. We conclude that this argument is without merit. A gift is a "voluntary transfer of property to another made gratuitously and ***without consideration***." ***Black's Law Dictionary*** 619 (5th ed. 1979) (emphasis added); ***accord Massey v. Pemberton***, 390 S.W.2d

709, 713 (Tenn. App. 1964). Where an employee agrees to work for a company in exchange for not only a salary but an ownership interest in the company, and the employee proceeds to perform his part of the bargain, the services performed by the employee constitute a valuable consideration for the employer's subsequent transfer of corporate stock to the employee. *See, e.g.*, *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 663 (Tenn. 1983); *Buice v. Scruggs Equip. Co.*, 250 S.W.2d 44, 46-47 (Tenn. 1952). In light of his concession that he received the 49% interest in the insurance agency in consideration for going to work with his father in the agency, we reject the Plaintiff's contention that his interest in the agency was a gift.

As for the 14th Avenue commercial building, the Plaintiff acquired this property from B.H. and Frieda C. Shepard in September 1981. The warranty deed indicated that the consideration for the transfer was $6500 in cash. As with the thirty-acre tract, however, the Plaintiff testified that his father actually paid the purchase price and made a gift of the property to the Plaintiff. The Defendant knew that the parties had rented the 14th Avenue property to various businesses over the years, but she testified that she was not aware at the time of its acquisition that the property was a gift.

We are at a loss to explain why the trial court reached a different result when it classified the thirty-acre tract as the Plaintiff's separate property but classified the 14th Avenue commercial building as marital property. With regard to both acquisitions, the Plaintiff's testimony was virtually the same. The Plaintiff testified that his father paid the purchase price for both properties and, thus, made a gift of the properties to the Plaintiff. Nevertheless, we recognize that the trial court was in a unique position to view the parties' testimony and to judge their credibility with regard to each property at issue. The trial court simply may have believed the Plaintiff's testimony with regard to the thirty-acre tract but rejected his similar testimony concerning the 14th Avenue property. In light of the deference with which we are required to treat the trial court's findings, and in light of the Defendant's testimony that she was unaware of the occurrence of any gift at the time the property was acquired, we decline to disturb the trial court's ruling that the 14th Avenue commercial building constituted marital property subject to division.

### VII. Trial Court's Disposition of Marital Home

Both parties have raised issues with regard to the trial court's disposition of the marital home. As previously indicated, the trial court's order permitted either party to purchase the marital home by paying to the other party his or her share of the equity in the marital home as of the May 9, 1989, divorce date. The order further provided that, if the parties could not agree on which party would buy the marital home, the home would be sold.

The Plaintiff contends that he should be permitted to purchase the Defendant's share of the equity in the marital home as of the May 1989 divorce date, and he asks us to modify the trial court's judgment accordingly. In contrast, the Defendant does not request that she be permitted to purchase the Plaintiff's share of the equity in the marital home. Instead, the Defendant contends that it would be inequitable to allow the Plaintiff to purchase her share of the equity at the 1989 value, and she asks this court to modify the trial court's judgment by ordering the sale of the marital home.

We conclude that the trial court properly used the 1989 divorce date for purposes of valuing the marital home. The statute governing the distribution of marital property requires that property be valued "as of a date as near as reasonably possible to the final divorce hearing date." *Wright v. Quillen*, 909 S.W.2d 804, 809 (Tenn. App. 1995) (quoting T.C.A. § 36-4-121(b)(1)(A) (1991)). In construing the meaning of the term "final divorce hearing date," this court has held that the appropriate date for valuing the parties' property is the date a decree is entered declaring the parties divorced. In *Preston v. Preston*, No. 03A01-9406-CV-00202, 1995 WL 10345, at *1 (Tenn. App. Jan. 11, 1995), *perm. app. dismissed* (Tenn. Mar. 27, 1995), as in the present case, the issues of divorce and the division of marital property were bifurcated. The trial court entered a decree granting the wife an absolute divorce on July 3, 1990, but the final hearing for determining the value of the marital assets did not take place until over three years later. *Preston v. Preston*, 1995 WL 10345, at *7. This court concluded that the critical date for valuing the parties' property was July 3, 1990, the date the divorce decree was entered. *Id*. Quoting section 36-4-121(b)(1)(A), the court reasoned that "[a]ny property coming into either party's ownership after July 3, 1990, would not be properly classified as marital property as it would not have been 'acquired . . . during the course of the marriage.'" *Id*.

In the present case, the parties' marriage ended on May 9, 1989, when the trial court entered its final divorce decree. Accordingly, despite the fact that the trial on the distribution of the parties' property did not take place until April 5, 1994, the Defendant was entitled only to her share of the equity in the marital home existing as of May 9, 1989. Contrary to her argument on appeal, the Defendant was not entitled to one-half of the net proceeds which a sale of the home would produce at its current value. Based on this same reasoning, the Defendant was not entitled to any of the income which the marital home theoretically might have produced since the May 1989 divorce date.

In any event, we note that, at the April 1994 trial, the Defendant's attorney asked the court to use the May 1989 divorce date as the date for valuing the parties' property. Specifically, the Defendant's attorney made the following argument:

> If the Court please, I have one other. The divorce date was May 8 [sic], 1989, and we would request that the evaluations be as of or as close to the date [of] the divorce as possible as required by statute. And, we would move *in limine* for any testimony past that date as to devaluation or expenditures.

A party is not entitled to relief on appeal based upon an error for which she is responsible. ***Betty v. Metropolitan Gov't***, 835 S.W.2d 1, 9-11 (Tenn. App. 1992); ***Fortson v. Fortson***, No. 03A01-9611-CV-00363, 1997 WL 529001, at *3 (Tenn. App. Aug. 28, 1997); T.R.A.P. 36(a). In light of the foregoing argument by the Defendant's own trial counsel, the Defendant cannot now be heard to complain that the trial court erred in using the May 1989 divorce date as the date for valuing the marital home.

### *VIII. Conclusion*

The trial court's judgment is hereby modified to reflect that the Plaintiff's interest in the 162-acre farm which he owns jointly with his brother is marital property subject to division. The trial court's judgment is further modified to provide that the Plaintiff may purchase the marital home by paying to the Defendant her share of the equity in the marital home existing as of May 9, 1989, the date of the parties' divorce. In all other respects, the trial court's judgment is affirmed. This

cause is remanded to the trial court for an equitable distribution of the 162-acre farm and any further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to the Defendant and one-half to the Plaintiff, for which execution may issue if necessary.

_____
                                                    FARMER, J.


_____
HIGHERS, J. (Concurs)


_____
LILLARD, J. (Concurs)