# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs, November 13, 2009

## DANA FOUST BOCHETTE v. MICHAEL LOUIS BOCHETTE

**Appeal from the Circuit Court for Wilson County**
**No. 5601DVC     Hon. Clara Byrd, Judge**

---

**No. M2009-00113-COA-R3-CV - February 2, 2010**

---

In this divorce case, the Trial Court awarded the wife the divorce, and awarded her alimony in solido. One-half of the equity in the home was awarded to the wife, and other one-half of the equity in the home was awarded to the wife as alimony in solido. The Court also awarded the wife one-half of the workers' compensation settlement proceeds obtained by the husband during the marriage. On appeal, the husband questioned the distribution of the marital property and the Trial Court's ruling that the workers' compensation award was also marital property. On appeal, we affirm the Judgment of the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

F. Michie Gibson, Jr., Nashville, Tennessee, for the appellant, Michael Louis Bochette.

Brody N. Kane and Angel P. Kane, Lebanon, Tennessee, for the appellee, Dana Foust Bochette.

## OPINION

### Background

Plaintiff wife brought this divorce action against defendant husband. The parties were

married in 1980, and separated in 2006, and at the time of the filing of the divorce, the parties had one grown child and one child who had not yet reached majority. The wife alleged several grounds for divorce and sought custody of the minor child, support for the child, an equitable property division, and exclusive possession of the marital residence and Pendente Lite Support.

The husband filed an Answer, generally denying the allegations, but admitted the wife should have custody of the child.

In hearings by the Trial Court on the wife's motions, the Court ordered the husband to pay pendente lite support of $1,962.00 per month, and the wife would continue to pay the mortgage, insurance, and credit card debts. All other issues were reserved for the final hearing.

In yet another hearing, the Court found the husband was $2,321.00 in arrears on his support obligation, and ordered the husband to pay the arrearage by a date certain. The Court ordered the parties to mediation, and denied the husband's motion to reduce support.

The husband then filed another Motion to Reduce Support, stating that the child had reached the age of majority and would be graduating soon. The Court entered an Order reducing support when the child graduated, and also ordered the husband to account for the proceeds of his workers' compensation settlement.

**The Trial**

At the beginning of the trial the parties stipulated that the husband was guilty of adultery. The wife testified that she and the husband had been married for 28 years, and had three boys, one of whom was murdered in 2002. She testified that she had fought depression since then and suffered from anxiety attacks, and that she was on medication. She testified that she worked for Central Parking as a shuttle bus driver, and made $12.75 per hour, and that she had applied for several jobs, but did not get them for lack of experience/computer skills.

The wife testified the husband was the primary breadwinner, and worked part-time at UPS and part-time in his father's business until about 2000, when he became a full-time employee of UPS. She testified that she had no other retirement accounts other than her current 401(k), which was worth $139.00, and that she had a monthly expense shortfall of $1,261.00. She stated that she needed alimony, but was concerned about periodic alimony because she would have trouble collecting, given her husband's track record about making payments. She was also concerned about the fact that he was on probation and could end up in jail with no income. She testified that she needed alimony of at least $1,000.00 per month for at least five years, and she would like to get lump sum alimony via their equity in the marital residence, so she could sell the house and buy something smaller, and go back to school in order to get a better job.

The wife testified that their house was appraised for $290,000.00, but she did not think it would sell for that at the present time. She testified they had little debt besides the mortgage, as they

only had one joint credit card, on which the husband had incurred most of the charges. She testified the husband had received a lump sum workers' comp settlement, but he had spent all of it.

The husband then testified. He stated that he was 49 years old, and worked at UPS making $28.00 per hour, and that he worked 40 hours per week when he could, but was currently on medical leave, because he had cracked a bone in his ankle at work some 5 weeks ago. He also testified that he had back pain. He admitted that he had been late with his support payments, and stated that sometimes he was not working. He also admitted that he had been in the marijuana business since he was 19, and basically for the entire time the parties were married. He testified that the wife helped him in the business by wrapping boxes, and separating bales into pounds, etc. He testified that she shared in the proceeds of his marijuana sales to take vacations. He stated that when he had to leave the marital residence he had nothing and nowhere to go, so he moved in with his girl friend.

Finally, when he got his workers' compensation settlement, he testified he used the proceeds to get an apartment, buy furniture and appliances, and that he took a trip to Florida to relieve his stress.

### The Trial Court's Judgment

The Court entered a Final Order awarding a divorce to the wife based on the husband's adultery, and found the marriage was of long term duration and the children were adults. The Court observed the wife had tried to find better employment, and that she suffered from depression. The Trial Court found the husband had a criminal record and was currently on probation, and that the parties had spent marital funds on the husband's legal fees.

The Court then found the wife needed alimony and the husband had the ability to pay, and that the wife's need was based on her age, lack of education and work experience, and depression. The Court awarded the wife alimony in solido of $71,000.00, which the Court found to be the value of the husband's half of the equity in the home. The Court found that an in solido award was appropriate because the husband had a bad track record of paying his pendente lite support.

The Court stated the parties' home was worth $290,000.00, and that after deducting what was owed on it plus the fees required to sell it, the equity would be worth $142,000.00. The Court then awarded all of the equity in the home to the wife, finding that one half was her equitable distribution and the other half was alimony in solido.

The Court found the husband received a workers' compensation lump sum settlement of $63,648.00, and that he spent all of it and could not account for it. The Court held the benefits accrued during the marriage, and the husband violated the mutual injunction by dissipating marital funds. The Court held the wife was entitled to half of the value of his settlement, since it represented lost income during the marriage. The Court also awarded the wife one-half of the husband's UPS pension, and 401(k). The Court awarded the wife the entire value of the Allstate life insurance

-3-

policy, the husband's half was for payment of attorney's fees.

The Court awarded husband's half of certain other accounts to the wife, also in payment of attorney's fees. The husband was ordered to pay the Capital One debt, and the Court awarded him certain items of personalty.

The husband has appealed and raises these issues:

1.      Whether the Trial Court erred in its distribution of the marital property?
2.      Whether the Trial Court erred in ruling that defendant's workers' compensation award was marital property?

**Discussion of the Issues**

Since the parties' assets must be properly classified before they can be equitably divided (see Tenn.Code Ann. § 36-4-121(b)), we address the issue regarding the classification of defendant's workers' compensation award first.

The Trial Court has wide discretion in classifying property. *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App.1998). On appeal, the trial court's decision on this issue is entitled to great weight, and absent an error of law, the trial court's classification of property will be reversed or modified only if the evidence preponderates against the court's decision. *Id., see also* Tenn. R.App. P. 13(d).

The husband insists the Trial Court erred in classifying his lump sum workers' compensation award as marital property, because part of it was to replace future lost wages. He points to the wording in the Final Order and Judgment, which states that the lump sum represents disability payments to be distributed over the remainder of his lifetime, and then gives a dollar amount to be attributed to him per month for social security purposes. The Final Order also states that defendant suffered injury on August 4, 2005, and had a resulting permanent disability. The Final Order further states that defendant reached maximum medical improvement on January 1, 2006, and that "all accrued benefits since January 1 are due and owing and should be paid in lump sum". The Court then awarded a lump sum benefit of 120 weeks at $663.00 per week.

The wife argues that the time frame, i.e. 120 weeks beginning January 1, 2006, places the accrual of the entire award squarely within the time of the marriage.

This question was addressed in the case of *Bilyeu v. Bilyeu*, 196 S.W.3d 131 (Tenn. Ct. App. 2005), where this Court said:

Husband received the workers' compensation award in a lump sum prior to the parties' divorce; nevertheless, he contends the workers' compensation award was intended to compensate him for lost wages extending for the duration of his expected career, beyond the

date of the parties' 2002 divorce. Husband's argument rests on a line of reasoning concerning the nature of workers' compensation awards and the possibility that his award could apply to post-divorce wages. The purpose of workers' compensation is to "provide insured workers with periodic payments, which are a substitute for regular wages," *Dudley v. Dudley*, M1998-00982-COA-R3-CV, 2000 WL 1425279, at *3(Tenn. Ct. App. Sept.28, 2000) (citations omitted). Since the future income of a spouse is generally not classified as marital property, disability benefits which replace future income are not to be classified as marital property. *Gragg v. Gragg*, 12 S.W.3d 412, 418 (Tenn. 2000) (finding that the majority of courts considering the classification of disability benefits has adopted the analytical approach, which focuses on the nature and purpose of the benefits at issue); see also *Dudley,* 2000 WL 1425279 at *3 (applying *Gragg* to workers' compensation benefits).

In *Dudley*, this Court explained that "workers' compensation settlement funds are marital property to the extent that they replaced wages that Mr. Dudley would have earned during the marriage had it not been for his work-related injury." *Dudley*, 2000 WL 1425279 at *9.

The legislature has clearly spoken on this issue as well. Tenn. Code Ann. §36-4-121 states:

"Marital property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

Tenn. Code Ann. §36-4-121 (b)(1)(C). Moreover, the definition of separate property, on the other hand, specifically lists future lost wages. Tenn. Code Ann. §36-4-121 (b)(2).

In this case, the work-related injury, time off from work, and loss of income clearly occurred during the marriage. A similar situation arose in the case of *Daniel v. Daniel*, 2007 WL 3202778 (Tenn. Ct. App. Oct. 31, 2007), wherein the husband suffered a work injury and received a permanent partial disability rating and 120 weeks of benefits based thereon. This Court found it significant that the injury occurred during the marriage, the wages were lost during the marriage, and the award was received during the marriage. *Id.* This Court went on to state that Tenn. Code Ann. §36-4-121 contains a presumption that assets acquired by either party during the marriage are marital property, and that husband had failed to rebut that presumption. Thus, the Court ruled that the award was appropriately classified as marital property.

The burden was on the husband to establish that the evidence preponderated against the Trial Court's findings of fact on this issue. *Bilyeu*. Despite the language in the Final Order regarding disability payments being spread over the husband's lifetime, the Order clearly stated that the award is for 120 weeks at $663.00 per week, which would place the benefits being paid within the time frame of the marriage to replace wages lost during the marriage. Since the injury occurred during the marriage as did the time off from work and resulting lost wages, we affirm the Trial Court's finding that the award was marital property.

Finally, the husband argues that the Trial Court erred in its distribution of the marital property. The distribution splits most assets equally, but then gives the wife the husband's half of the equity in the home as alimony in solido, and gives the wife half of certain other assets in payment of her attorney's fees. The husband did not take issue with either the alimony award nor the attorney's fee award, but his argument focuses solely on the equity in the house, as the husband claims it was error for the Trial Court to reduce the home's appraised value by 10% to account for the costs associated with selling it, thereby depriving him of some of the equity in the home.

The Trial Court did take judicial notice of the fact that there would be realtor fees and closing costs associated with the sale of the home, and that considering such costs as well as the costs that would be incurred in "fixing up" the home for sale, a reduction of 10% in value was appropriate. The evidence does not preponderate against the Trial Court's finding regarding the home's value. Tenn. R. App. P. 13(d). *See, Wallace v. Wallace*, 733 S.W.2d 102 (Tenn. Ct. App. 1987).

In sum we find the Trial Court did not abuse its discretion in this case and the factual findings by the Trial Court do not preponderate against the evidence. Accordingly, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Michael Louis Bochette.

_____
HERSCHEL PICKENS FRANKS, P.J.