IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2002 Session

## MITZI GAY GREGORY BLAIR v. JOHN DAVID BLAIR

**Appeal from the Circuit Court for Sumner County**
**No. 21496-C     C.L. Rogers, Judge**

_____

**No. M2001-02790-COA-R3-C - Filed March 13, 2003**

_____

This divorce case involves issues of property classification and division regarding real property purchased by Wife prior to the parties' marriage and titled jointly in both Wife and Husband's names. The property became the marital residence where the couple lived during their marriage, but the majority of payments on the house mortgage were made by Wife's parents. Husband contributed virtually nothing to the marriage and substantially dissipated the couples assets through gambling and drug use. The trial court found the house to be marital property and divided the equity by giving the first $75,000.00 to Wife, as her original contribution, then dividing the remaining equity between the parties: 75% to Wife, 25% to Husband. Husband claims that half of the $75,000.00 down payment was a gift made to him by Wife prior to the marriage and, thus, his separate property. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., and JOHN A. TURNBULL, SP. J., joined.

John R. Phillips, Jr., Gallatin, Tennessee, for the appellant, John David Blair.

Bruce N. Oldham and Sue Hynds Dunning, Gallatin, Tennessee, for the appellee, Mitzi Gay Gregory Blair.

## OPINION

The Parties, Mitzi Gay Gregory Blair (Plaintiff/Appellee), and John David Blair (Defendant/ Appellant), were married for 6 years and divorced on August 7, 2001. Plaintiff came into the marriage with assets of around $100,000.00; Defendant came into the marriage with virtually no assets. Prior to the marriage, Plaintiff purchased a home and titled it in the names of both Plaintiff and Defendant as tenants in common. However, Defendant contributed nothing towards the home purchase; while, Plaintiff contributed $75,000.00 of her separate assets as the down payment. Defendant also made virtually no contribution toward the home mortgage, either before or during

the marriage, using his earnings primarily for drugs and gambling. In the first year after purchasing the home, the mortgage payments were taken over by Plaintiff's parents due to the parties' financial difficulties. The parties made no further payments themselves on the home mortgage.

The trial judge found the home to be marital property and ordered it sold. He further returned the first $75,000.00 of equity to Plaintiff and divided the remaining equity: 75% to Plaintiff, 25% to Defendant. Said the court:

> 2. It is clear to the Court, based on the evidence, that the Husband has a very bad credibility problem.
>
> . . . .
>
> 4. The separate property of the Wife consists of the following: Dining Room table, chairs & hutch; antique bedroom suite; white iron bed; all Caroline's bedroom furniture; antique chest; coffee table; dryer; leather recliner; kitchen table and chairs; refrigerator; entertainment center; sofa; 18" television; CD at Macon Bank; savings account at Macon Bank; any funds in the leasing account; and 500 share of stock in First Independent Bank.
>
> 5. The separate property of the Husband consists of the following: antique pitcher and bowl.
>
> 6. Marital property consists of the television set in the den, the washer, the cherry bedroom set, the Sea Sprite boat, the 1994 Jeep Cherokee, the marital residence at 108 Jackson Drive, Hendersonville, Tennessee and the proceeds from the Tahoe on deposit with the Clerk of the Court.
>
> 7. The Court has considered all of the factors set forth in T.C.A. §36-4-11 and the evidence presented relative to an equitable distribution of the marital property. The number one factor is the duration of this marriage, which is short. The second factor is the contribution of each to the acquisition and dissipation of the marital property. The Court specifically finds that the Husband has greatly dissipated and greatly wasted assets of this marriage, regardless of where they came from, because of drugs. The Court further considered the condition of the estate that each brought into the marriage and the ability of each of these individuals for future acquisitions. Both of them, if put out in the middle of nowhere, can survive, as they are very talented people. The Husband is just making some very wrong choices. The Wife may have thought she was doing the right thing by her joint participation early on in these activities, but she can see now that those choices were wrong.
>
> 8. An equitable division of the marital personal property is as follows: The TV in the den, the washer, the computer, the paining of the daughter, the bakers rack, the two dogs, the china set and whatever is in her retirement account are awarded to the Wife. The cherry bedroom suite, the Sea Sprite boat and the 1994 Jeep Cherokee are awarded to the Husband.

9. The House is already on the market and shall be sold. It can continue to be privately listed until the parties come back to court and say that it just can't happen and they want something else done. The parties are tenants in common in this property. If the property is sold, after payment of the mortgage and costs of sale, the first $75,000.00 will be returned to the Wife as her original contribution. The remaining proceeds will be divided 75% to the Wife and 25% to the Husband, which represents the best approximation regarding contributions to the marriage and, more importantly, dissipation of the assets.

. . . .

It is, therefore, ORDERED, ADJUDGED and DECREED as follows:

. . . .

4. The Wife is awarded the following marital personal property: The TV in the den, the washer, the computer, the painting of the daughter, the bakes rack, the two dogs, the china set; whatever is in her retirement account, the first $75,000.00 of the proceeds of the sale of the marital residence after payment of the mortgage and the costs of sale and 75% (seventy five percent) of the remaining proceeds; 75% (seventy five percent) of the Tahoe proceeds on deposit with the Clerk of the Court.
5. The Husband is awarded the following marital property: the cherry bedroom suite (sic), the 1994 Jeep Cherokee, the Sea Sprite boat; 25% (twenty five percent) of the proceeds of the sale of the marital residence after deduction of the mortgage, the costs of sale, and the $75,000.00 allocation to the Wife; 25% (twenty-five percent) of the Tahoe proceeds on deposit with the Clerk of the Court.

Defendant appealed the trial court's decision claiming entitlement to a portion of the $75,000.00 returned to Plaintiff and alleging that half of that amount was a premarital gift made to him when the home was titled in both parties names prior to marriage.

The standard of review in this matter is *de novo* with a presumption that the court's findings are correct unless the evidence preponderate against those findings.

We review the findings of fact by the trial court *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses. *Gillock v. Board of Prof'l Responsibility*, 656 S.W.2d 365, 367 (Tenn. 1983).

In cases involving issues of classification and distribution of property, a trial court's decisions enjoy a presumption of correctness. *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998). Accordingly, a trial court's division of the marital estate should be presumed proper unless the evidence preponderates otherwise. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984).

*Deneau v. Deneau*, No. M2000-00238-COA-R3-CV, 2001 WL 177063, at *2-3 (Tenn. Ct. App. Feb. 23, 2001).

Defendant contributed nothing toward the initial purchase of the home while Plaintiff contributed $75,000.00 for the down payment when the home was initially purchased. Plaintiff and her parents also provided most of the money used to make payments on the property while Defendant provided virtually no assistance with payments on the marital home, or any other expenses of the marriage. Even though the property was titled in the names of both parties as tenants in common prior to the marriage, Plaintiff testified that such was done only in anticipation of the marriage for use as a marital residence. No evidence was introduced showing that any portion of the property was intended as a personal gift to Defendant.

Further, after their marriage, the property became the marital home and was treated as marital property by both parties. Due to the joint ownership, wife's testimony, and treatment of the property by both parties as marital property, the evidence does not preponderate against the court's finding that the home was marital property. The doctrine of transmutation can be applied to this situation.

Another panel of this Court recognized recently that separate property may become part of the marital estate if its owner treats it as if it were marital property. Professor Clark describes the doctrine of transmutation as follows:

> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

2 H. Clark, *The Law of Domestic Relations in the United States* § 16.2, at 185 (1987).

*Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988). Plaintiff's testimony clearly indicates her intent to purchase a home for use as a marital residence, and this property was treated by both parties as marital.

Once the property is classified as marital, the court may make an equitable division of the property.

> The trial court is charged with equitably dividing, distributing, or assigning the marital property in "proportions as the court deems just." Tenn.Code Ann. § 36-4-121(a)(1). Thus, after the property is classified, the court is to make an equitable division of the marital property. The court is to consider several factors in its distribution, including the duration of the marriage, the contribution to and dissipation of the marital estate, the value of the separate property, and the estate of each party at the time of the marriage. Tenn.Code Ann. § 36-4-121(c) (listing the factors to be considered). The court may consider any other factors necessary in determining the equities between the parties, Tenn.Code Ann. § 36-4-121(c)(11), except that division of the marital property is to be made without regard to marital fault. Tenn.Code Ann. § 36-4-121(a)(1).

> The court's distribution of property "is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson*, 769 S.W.2d at 859. An equitable distribution is not necessarily an equal one. *Word v. Word*, 937 S.W.2d 931, 933 (Tenn.Ct.App.1996). Thus, a division is not rendered inequitable simply because it is not precisely equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn.1996); *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn.Ct.App.1998). Similarly, equity does not require that each party receive a share of every piece of marital property. *King v.* King, 986 S.W.2d 216, 219 (Tenn.Ct.App. 1998); *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn.Ct.App.1994).

> The trial court's goal in a divorce case is to divide the marital property in an essentially equitable manner, and equity in such cases is dependent on the facts of each case. The fairness of a particular division of property between two divorcing parties is judged upon its final results. *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn.Ct.App.1997).

> Again, however, some general principles have been developed. Because dividing a marital estate is a process guided by considering all relevant factors, including those listed in Tenn.Code Ann. § 36-4-121(c), in light of the facts of a particular case, a trial court has a great deal of discretion concerning the manner in which it divides marital property. *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn.Ct.App.1997); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn.Ct.App.1987). Appellate courts ordinarily defer to the trial judge's decision unless it is inconsistent

with the factors in Tenn.Code Ann. § 36-4-121(c), or is not supported by a preponderance of the evidence. *Brown*, 913 S.W.2d at 168; *Wilson v. Moore*, 929 S.W.2d at 372.

*Lewis v. Frances*, No. M1998-00946-COA-R3-CV, 2001 WL 219662 (Tenn.Ct.App. March 7, 2001). The trial court specifically found that the marriage was of short duration and that Defendant wasted and dissipated most of the marital assets. The court also considered the assets each party brought to the marriage. We find no evidence that the distribution of the equity in the marital residence was not equitable. In fact, it appears that the trial court was most generous to Defendant in this case.

However, even if the court were wrong in classifying the property as marital, this Court still finds the overall effect of the trial court's distribution to be equitable. Such was the finding by this Court in *Batson*:

> Both Dr. Batson and Mrs. Batson take issue with the manner in which the trial court divided their property. They insist that the trial court erred in classifying specific assets as either marital or separate property and that the distribution of the marital estate was inequitable. We find that the trial court misclassified several assets and failed to deal with others. However, we find that the overall effect of the trial court's distribution is equitable. Therefore, we affirm the trial court's division of the Batsons' property subject to the modifications discussed below.

*Batson*, 769 S.W.2d at 854-55.

As is true in most cases involving divorce, classification of property and distribution of property, this case is intensely fact-driven. The trial court found the marital home of the parties to be marital property and the evidence does not preponderate against this determination. The trial court found, and the evidence clearly establishes, that Defendant came into the marriage with practically nothing and made infinitesimal contributions to the marital estate. The marriage survived through the income of Plaintiff and massive contributions made by Plaintiff's parents. Defendant dissipated his own income and the marital estate because of his addiction to drugs and gambling. He now seeks to claim that Plaintiff made a gift to him prior to their marriage by footing the bills for a down payment on the soon-to-be marital home and that this gift survived his prolific dissipation of property, to the accumulation of which he provided practically nothing. The trial judge did not allow this to happen, and, as we find his judgment to be eminently correct, it is in all respects affirmed. The case is remanded for such further proceedings as may be necessary.

Costs of the cause are assessed against Appellant.

_____
WILLIAM B. CAIN, JUDGE