# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 18, 2013 Session

## STEPHANIE TREGO McCOY v. STEVEN McCOY

**Appeal from the Chancery Court for Loudon County**
**No. 11871      Frank V. Williams, III, Chancellor**

---

**No. E2012-02698-COA-R3-CV-FILED-NOVEMBER 4, 2013**

---

In this divorce action, the husband appeals the classification and division of the marital estate, the alimony and attorney fee awards, and the parenting plan decision of the trial court. The decision of the trial court is affirmed in part and modified in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part and Modified in Part; Case Remanded.**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Donald Capparella and Candi Henry, Nashville, Tennessee, and Kimberlee A. Waterhouse, Lenoir City, Tennessee, for the appellant, Steven McCoy.

Martha Meares and E. Leith Marsh, Maryville, Tennessee, for the appellee, Stephanie Trego McCoy.

## OPINION

## I. BACKGROUND

Stephanie Trego McCoy ("Wife") and Steven McCoy ("Husband") dated in high school. Upon graduation, Husband went to work for Lenoir City Utilities Board ("LCUB") and Wife began studying elementary education at the University of Tennessee. In July 1996, the parties became engaged. In anticipation of the marriage, Wife's father located a starter home for the couple on A Street in Lenoir City with a purchase price of $32,500. Husband paid approximately $16,000 as a down payment on the residence. Wife contends she paid approximately $8,000 toward, inter alia, carpet, paint, and wallpaper to improve and furnish

the house. She further asserts her money went toward some furniture. According to Wife, her father built a deck on the back of the A Street home and also constructed a detached garage. She notes the parties worked together to repair the siding, replace the banisters on the front porch, and install landscaping. In May 1997, the parties were married and moved into the home.

Once the parties were married, Wife, at the urging of Husband, did not go back to school to finish her degree, despite only lacking 12-14 hours to graduate. Rather, to earn extra money, Wife began keeping children in the A Street home. The parties, by mutual agreement, did not report the income gained from Wife's child care services. According to Husband, he was able to pay off the A Street property shortly after he and Wife were married by making extra payments.

Two children were born during the marriage – a girl born on May 22, 1999, and a boy born on June 11, 2001. A loan was taken out against the A Street house in order to build a new home at 330 Hilltop Drive. The A Street property thereafter was used to generate rental income for the couple. The basement of the new residence was constructed in a manner conducive for Wife to continue her child care services.

In September 2009, the parties' relationship started to deteriorate. According to Wife, Husband began gambling, drinking heavily, staying out all night and not returning for days at a time. Upon her inquiries regarding his absences, Wife testified Husband would often become both verbally and physically abusive. In February 2011, the parties separated, with Wife remaining in the marital residence on Hilltop Drive. During the separation, Husband was known to be residing with his girlfriend at her home. In June 2011, Wife filed a complaint for divorce.

At the conclusion of the trial on April 24, 2012, the court stated from the bench as follows:

> First of all, I'm going to grant the divorce to the wife on the basis of adultery, and resolving all issues with regard to the grounds for divorce in favor of the wife, and against the husband. And based upon not only the testimony of the numerous witnesses but also the exhibits that have been introduced, and his own admissions about where he's keeping himself and his vehicles, and where he's spending the night. And I believe that he's having an affair with this Kelly Woods, and that that was the cause for the breakup of the marriage. That the wife has developed a friendship with somebody subsequent to that, and that there's been no showing that she's committed adultery. And that all the issues regarding the divorce itself are therefore resolved in favor of the

wife. And in that regard the proof as to grounds is not even close. It weighs heavily in favor of the wife and against the husband.

**Furthermore, I think the house at 8408 A Street is marital property.** And that **the house should be sold at public auction** by the Clerk as special commissioner, or if the parties want to secure a real estate broker instead of the Clerk and Master, then they are free to do so. But as quickly as they can get that sold, and **the proceeds should be applied first to the cost of sale and then I want the balance of the proceeds from the sale of that house to go to the payment of the credit card owing to Chase Credit Card Services, I reckon that is in the approximate amount of [$19,000]**. And then if there's any money left from that then we will deal with that here in just a minute.

**The wife is to receive as her sole and exclusive property the house and real property at 300 Hilltop Drive, Lenior City, Tennessee. She is to be responsible for payment of the outstanding indebtedness on that property to the Bank of America in the approximate amount of [$128,914.67], or [$130,000] plus**, whatever the value – whatever the amount of the indebtedness is, she is to be responsible for the payment of that.

The husband gets his 1974 VW Beetle. The wife gets her 2000 Nissan Quest. I suppose the 1999 Jeep Grand Cherokee is the husband's property and I assign a value of [$2,000] for that. The wife gets the lawn mower for [$300]. The husband gets the 1999 Sting Ray boat of [$4,500]. And the wife gets the golf cart at [$500]. The wife gets the household furniture, furnishings and appliances as shown on the attached schedule for Exhibit number eight, which I affix the value of those at [$16,000]. The husband gets his tools, which I assign a value of [$2,000] for that, and the workout equipment, which I assign [$250] for that. And the husband's collectibles of [$1,000].

* * *

THE COURT: Well, he can have [$1,000] assigned to collectibles owned prior to the marriage, that's not going to effect anybody, I don't think. The wife gets her bank accounts, [$100], plus whatever the insurance check, if it's in there. The husband gets his bank account of [$300]. The joint IRA at Prime America goes to the wife. [$8,846]. The husband's pension is to be divided according to the formula suggested by the husband. The husband's 401(k) is to be equally divided. And the last item on liabilities is the – is that the old –

MS. WATERHOUSE:  An Old Navy credit card.

THE COURT:  And I'm going to assign that to the husband to pay.  And then I find that the wife should be entitled to some alimony, and I'm going to order that the husband maintain the current payments that he's making for the next two years.  And then for the two years after that the amount that he's presently paying the wife, the child support should be based upon his income, of course, and I'm approving the wife's parenting plan, by the way, in that regard.  But the husband, for the next two years – the first two years the payments are going to be exactly as they are.  The next two years after that the amount that the husband is presently paying towards the mortgage is going to go – is going to decrease by half and go to the wife.  And the husband is to keep paying for those two years, and I said he's to maintain those payments for two years.  And I'm not just talking about the mortgage, but I'm talking about the taxes, the other insurance.  All the things that he's presently paying.

I'm finding that the wife does not have, because she quit school, the opportunity to gain employment until she – the kind of employment that she needs that would have allowed her to make a substantial – a reasonable income until she gets finished with her education.  I'm doing this to allow her two years in order to complete her college degree and – and for the two years after that I think that it's appropriate because of the husband's adultery, so I'm really looking at this as much as in solido alimony as I am rehabilitative alimony.  So I just think the husband is going to have to make these payments to give the wife an opportunity to get rehabilitated, and as a means of offsetting her unequal ability to work and earn wages when compared to the ability of the husband.

* * *

MS. WATERHOUSE:  Your Honor, [$150,000] equity in the home, how should that be divided, in the Hilltop home?

THE COURT:  She gets it.

MS. WATERHOUSE:  All the equity?

THE COURT:  All the equity in the house she gets it.

MS. WATERHOUSE:  And Your Honor, will you assign a value to the Beetle

and the [Nissan].

THE COURT:  The Volkswagen, the Beetle [$1,500] and the other one you wanted was what?

MS. WATERHOUSE:  The Quest, Your Honor.

THE COURT:  [$2,000] on that.  And **the equity in the house is all in solido alimony** and – oh, let me make another finding.  One more finding.  And that is with regard to credibility.  Now, there's no question that the husband has backed up some of the things that he's said with some paperwork.  But except for those rare instances where he had some sort of paperwork supporting what he said, I would find that he has no credibility whatsoever.  I do not believe Mr. McCoy on any contested issue.  I simply don't believe him.  I sat here all day.  I've listened to it.  I've listened to his excuses.  His explanations, and I simply do not believe anything that man has got to say, and that's putting it mildly.  And so things just didn't go well for Mr. McCoy today, and this is what happens when you get out and you do things like this.  Things go badly.  And I'm finding in favor of Ms. McCoy on all issues and resolving it as vigorously in her favor as I think that I can do, given the facts of the case. . . .

(Emphasis added).  In the final judgment, the trial court further directed that any remaining proceeds from the sale of the A Street house be used to pay Wife's attorney fees.  The judgment reflected that the trial court made the following findings in distributing the marital assets:

1.  The duration of this marriage is fourteen years and eleven (11) months.

2.  [Husband] has vocational skills, employability, and an earning capacity that far outweighs that of [Wife].  The financial needs of [Wife] far exceed that of [Husband].

3.  That [Wife] has no income with which to pay the debts of the parties or her attorney fees.

In awarding spousal support, the court found

1.  [Husband] has an earning capacity which far exceeds that of [Wife].

2.  [Wife] is in need of securing education and training so that she may increase her earning capacity.

* * *

4.  That [Wife] has been the victim of cruel, unwarranted, and mean behavior of [Husband] by exposing her to his blatant lying and adulterous relations which has resulted in a fragile and sad mental condition from which [Wife] is recovering.

* * *

6.  [Wife] has been a predominantly stay-at-home mother and it will be difficult for her to find employment outside the home.

* * *

8.  [Wife] has been awarded a larger share of the marital estate.

9.  The parties have enjoyed a comfortable standard of living.

10.  Both parties have contributed to the establishment of the marital estate and [Wife] has contributed primarily as a homemaker and help-mate to [Husband] to increase his earning power.

11.  [Husband] is at fault for the breakup of this marriage.  He has . . . participated in a secret and then blatant adulterous affair causing much hurt, emotional distress, and embarrassment to [Wife].

Husband filed a timely appeal.


## II.  ISSUES

We restate the issues raised by Husband in this appeal as follows:

1.  Whether the trial court erred in its award of alimony.

2.  Whether the trial court erred in its classification and division of the marital estate.

3. Whether the trial court abused its discretion in allowing Husband only 85 days per year of parenting time.

## III. STANDARD OF REVIEW

We review the trial court's findings of fact de novo on the record, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). When the trial court's factual determinations are based on its assessment of witness credibility, we will not reevaluate that assessment absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). We review a trial court's conclusions of law de novo, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

## MARITAL ESTATE

Upon the dissolution of a marriage, courts are called upon to divide the assets the parties accumulated during the marriage, upon the request of either party. The court first must classify the property of the parties as either separate or marital because only marital property is subject to equitable distribution. *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). "Separate property" is "[a]ll real and personal property owned by a spouse before marriage. . . ." Tenn. Code Ann. § 36-4-121(b)(2)(A). "Marital property" is defined as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce. . . ." Tenn. Code Ann. § 36-4-121(b)(1)(A). "[S]eparate property can become part of the marital estate due to the parties' treatment of the separate property." *Eldridge v. Eldridge*, 137 S.W.3d 1, 13 (Tenn. Ct. App. 2002). Transmutation occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. The trial court's classification and division of property is a finding of fact, which we presume to be correct unless the evidence preponderates otherwise. *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998).

Husband argues that the A Street home should have been awarded to him as separate property. Alternatively, if it is concluded that the house properly is a part of the marital estate, he argues that it and other assets sufficient to constitute an equitable division should be provided to him.

-7-

In Tennessee, absent some identifiable intent of the party for property to remain separate property, property purchased by one party during the engagement in anticipation of marriage to be used as the marital residence is transmuted to marital property. *See Gorbet v. Gorbet*, No. W2011-01879-COA-R3-CV, 2012 WL 4847090 (Tenn. Ct. App. Oct. 11, 2012). The A Street house was purchased by Husband prior to the marriage and titled in his name alone. It is undisputed, however, that the parties selected the house together while they were engaged for the purpose of living in it together once they were married. Neither party moved into the home until after the wedding. Wife contributed both labor and her savings in improving the home before and after the parties were married. Funds earned during the marriage were paid on the mortgage. Husband submitted no evidence to establish that he ever intended to keep the A Street house as his separate property during the marriage. On the contrary, Husband's intent to keep the home as his separate property surfaced only after the demise of the marriage. *See Gorbet*, 2012 WL 4847090, at *11. Accordingly, the evidence supports the determination of the trial court that the A Street house was marital property.

## ALIMONY

In regard to spousal support, a trial court has broad discretion to determine the need for it, as well as the appropriate nature, amount, and duration of that support. Tenn. Code Ann. § 36-5-121; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). An award of spousal support will not be disturbed on appeal absent an abuse of the trial court's discretion. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Under the abuse of discretion standard, a reviewing court cannot substitute its judgment for the trial court's judgment. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). Rather, a reviewing court will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.,* 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Therefore, "when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011).

Under our statutes governing alimony, a trial court is authorized to award alimony in divorce cases "to be paid by one spouse to or for the benefit of the other, or out of either spouse's property, according to the nature of the case and the circumstances of the parties." Tenn. Code Ann. § 36-5-121(a). All relevant factors, including the statutory factors listed

in Tennessee Code Annotated section 36-5-121(i), must be considered in determining whether alimony should be awarded to the relatively disadvantaged spouse and, if so, "the nature, amount, length of term, and manner of payment" of such an award. In awarding alimony, fault may be considered when the court deems it appropriate. Tenn. Code Ann. § 36-5-121(i)(11). The most important factors for a trial court faced with an alimony decision are the obligee spouse's need for the alimony and the obligor spouse's ability to pay. *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007).

At trial Wife was awarded the equity in the marital residence (approximately $146,000) as alimony in solido, accompanied by an award of 100% of the encumbrance on the property (approximately $129,000). Additionally, a rehabilitative alimony award was made in the amount of $1,552 for the first two years and $980 for the next two years. These alimony awards were made based first upon the trial court's findings of fault on part of Husband and no fault on the part of Wife. Further, the court made findings of Wife's need for support and an unequal ability to work and earn wages compared to the ability of Husband.

Wife admitted at trial that she previously made more money by keeping a greater number of children in her home, but presently earns $900 per month keeping four children – the maximum allowed by law without being certified. She testified that she now desires to finish her education rather than pursue the child care certification at this point in time. Even upon completion of her degree, Wife will not earn what Husband earns. Husband's income amounts to approximately $66,000 per year. He also has the possibility of additional pay in overtime compensation. We find that the trial court considered the appropriate factors in making the alimony awards to Wife.

## PROPERTY DIVISION

After identifying the marital property, a trial court must place a reasonable value on it and equitably divide it in "proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1); *Pope v. Pope*, No. M2010-00067-COA-R3-CV, 2010 WL 4272690, at *5 (Tenn. Ct. App. Oct. 28, 2010). The court is to consider all relevant factors in its distribution, including those listed in Tennessee Code Annotated section 36-4-121(c). The -121(c) factors are as follows:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the

parties;

(3)  The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4)  The relative ability of each party for future acquisitions of capital assets and income;

(5)  The contribution of each party to the acquisition, preservation, appreciation, or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;

(6)  The value of the separate property of each party;

(7)  The estate of each party at the time of the marriage;

(8)  The economic circumstances of each party at the time the division of property is to become effective;

(9)  The tax consequences to each party; and

(10)  Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

The court's distribution of property is to be achieved by considering and weighing the most relevant factors in light of the unique facts of the case. *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988).  An equitable distribution is not necessarily an equal one, and a division is not rendered inequitable simply because it is not precisely equal. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).  A trial court has a great deal of discretion concerning the manner in which it divides marital property. *Flannary*, 121 S.W.3d at 650. The division of marital property is to be made without regard to marital fault.  Tenn. Code Ann. § 36-4-121(a)(1).

The division or distribution of marital property includes the division of marital debt; in making an equitable distribution of existing marital debt, the trial court should consider the following factors: (1) which party incurred the debt, (2) the purpose of the debt, (3) which

-10-

party benefitted from incurring the debt, and (4) which party is better able to repay the debt. *Alford v. Alford*, 120 S.W.3d 810, 814 (Tenn. 2003).

On appeal, we presume the trial court's factual determinations as to value are correct unless the evidence preponderates against them. Tenn. R. App. P. 13(d). Thus, the trial court's distribution of the marital property is given a presumption of correctness that this court will not overturn unless it is contrary to the preponderance of the evidence. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984).

In the final judgment, the court indicated the total value of assets awarded to Wife was $152,755.75. Most of the amount indicated, however, was the alimony in solido award of the equity in the marital home. Husband received approximately $20,000 in marital assets and debts plus half the marital portion of his LCUB pension. Wife received approximately $28,000 in marital assets and debts plus half the marital portion of Husband's pension. A difference of approximately $8,000 separates the parties. Once the alimony awards are removed, the parties are in equitable positions. We find that a preponderance of the evidence supports the determination of the trial court.

## ATTORNEY'S FEES

An award of attorney's fees in divorce cases is considered alimony or spousal support, generally characterized as alimony in solido. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). Because attorney's fees are considered alimony or spousal support, an award of such fees is subject to the same factors that must be considered in the award of any other type of alimony. *Gonsewski*, 350 S.W.3d at 113; *Yount*, 91 S.W.3d at 783. Therefore, the statutory factors listed in Tennessee Code Annotated section 36-5-101(d)(1) are to be considered in a determination of whether to award attorney's fees. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 751 (Tenn. 2002). The decision about whether to award attorney fees as alimony in solido is within the sound discretion of the trial court, and such an award will not be disturbed on appeal unless the evidence preponderates against factual findings that support the trial court's decision. *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

An award of attorney's fees "is conditioned upon a lack of resources to prosecute or defend a suit in good faith . . ." and that such an award is to ensure access to the courts. *Langschmidt*, 81 S.W.3d at 751, quoting *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983). A spouse with adequate property and income is not entitled to an award of additional alimony to compensate for attorney's fees and expenses. *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984). If a party has adequate property and income, or is awarded adequate

property in the divorce, from which to pay his or her own expenses, an award of attorney's fees may not be appropriate after consideration of all relevant factors. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000). The award of attorney's fees as additional alimony is most appropriate where the divorce does not provide the obligee spouse with a source of funds, such as from property division, with which to pay his or her attorney's fees. *Yount*, 91 S.W.3d at 783.

Husband argues that the trial court erred in awarding Wife her attorney's fees because the trial court awarded these fees without a finding of reasonableness. Husband further argues that Wife has the ability to pay her own fees and expenses.

In awarding attorney fees, the trial court found considerable fault on the part of Husband, a total lack of credibility with regard to any contested issue heard by the court, Wife's demonstrated need, Husband's ability to pay, and a disparate earning potential even after Wife is rehabilitated. The record contains ample findings to support the award.

## PARENTING PLAN

The court adopted the parenting plan proposed by Wife in which Husband was awarded 85 days of co-parenting time. The adopted plan substantially reflected what Husband was already receiving: every other weekend, one evening a week, and two weeks in the summer. The parties were largely in agreement regarding the parenting plan. Husband has no dispute with Wife being designated as the primary residential parent. Husband contends however that he should receive four weeks of visitation in the summer rather than only two weeks. He asserts that depriving him the extra two weeks was an abuse of discretion. Husband argues that the legislature has mandated that he be allowed "maximum participation possible" in the lives of his children. *See* Tenn. Code Ann. § 36-6-106(a). He testified that his job provides him with five weeks of vacation. He further noted that his father is retiring and can assist him in keeping the children during the summer. We agree with Husband.

The paramount concern in establishing a parenting plan is the best interest of the children. *See* Tenn. Code Ann. § 36-6-401(a). Our focus must be placed there. In order to encourage the development of Husband's relationship with the children, we modify the parenting plan and award Husband two additional weeks of visitation in the summer.

## V. CONCLUSION

The decision of the trial court is affirmed in part and modified in part. Except as modified the judgment of the trial court is affirmed. Costs on appeal are taxed equally to the parties, Stephanie Trego McCoy and Steven McCoy. This case is remanded for further proceedings consistent with this opinion.

_____
JOHN W. McCLARTY, JUDGE