IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 19, 2015 Session

**STARLA MERKEL v. CARL SHANE MERKEL**

**Appeal from the Circuit Court for Bradley County
No. V-13-561     J. Michael Sharp, Judge**

_____

**No. E2014-01888-COA-R3-CV – Filed March 31, 2016**

_____

In this divorce case, Carl Shane Merkel (Husband) contends that the trial court erred in its division of the marital estate, its award of child support made retroactive to the date that Starla Merkel (Wife) filed her complaint, and its monetary award to Wife's father, Terry McKeel, who was allowed by agreed order to intervene as an indispensible party. The award to McKeel was based on the trial court's finding that Husband owed McKeel $15,343.45 for unpaid loans made during the marriage by McKeel to Husband. We find no error in the division of the marital estate and the trial court's child support order. We hold that the issue of Husband's debt to McKeel was properly raised in McKeel's cross-claim and that the trial court had jurisdiction to dispose of this claim under the factual scenario reflected in the record. Wife raises the issue of whether there is evidence supporting the trial court's order decreeing that Chris Allen, a friend of hers, could not be in the presence of the two children born to Husband and Wife. We agree and modify the trial court's judgment to remove the prohibition barring Allen from having contact with the children. The judgment is affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellant, Carl Shane Merkel.

Randy Sellers, Cleveland, Tennessee, for the appellees, Starla Markel and Terry McKeel.

# OPINION

## I.

The parties were married on April 17, 1999. Two children were born to their marriage. They were eleven and eight at the time of the filing of the divorce complaint. Husband and Wife separated in the summer of 2006. On August 7, 2006, Wife's father, McKeel, purchased a house, the West Lake residence, for the use and benefit of Wife and the children, paying $119,400 in cash from his life savings. The owners listed on the deed are McKeel and Wife. Shortly after McKeel bought the West Lake residence, Husband and Wife reconciled, and Husband moved in with Wife. They lived there together until the summer of 2013.

On August 1, 2013, Wife filed her complaint for divorce. On December 3, 2013, after Husband filed his answer to the complaint, the trial court entered an agreed order stating, in pertinent part, as follows:

> It being announced to the Court by counsel for [Husband and Wife] that there exists an issue of an indispensable party needed for adjudication in this case, pursuant to Rule 19 T.R.C.P., inasmuch as the joinder of Terry McKeel is necessary, which person has a legal interest by deed in the real property, which is one of the issues in this divorce and further . . . that Mr. McKeel agrees and also believes that he should be made a party to this lawsuit, it is hereby
>
> ORDERED that upon entry of this Order, Terry McKeel . . . is hereby joined as a third party defendant in this cause, for the sole purpose of adjudicating any and all rights to the [West Lake residence] by deed titled in the name of Terry McKeel and [Wife].

McKeel filed an answer to the complaint and joined a cross-claim against Husband, stating:

> In answer to the position of [Wife], as to the status of [the West Lake residence], wherein she asserts that it is her separate property, to that proposition, this party concurs. Further, after a timeframe, my daughter was convinced by [Husband] that the parties would reconcile and reluctantly,

she agreed that he move into the home and real estate that I had given her.

In answer to the position of [Husband] that he has an interest in this property, such is vehemently denied and strict proof is demanded thereof. Specifically, I have paid all the real property taxes on this property, have performed all of the maintenance on this property, and in addition, have loaned the parties approximately $60,000[ ] either in cash, or by payment of certain debts of the parties, since their marriage, including the following:

      -Down payment on 1st house - $6,000[ ]
      -Maroon truck (Steve's) - $2,200[ ]
      -Bodywork and parts on Honda - $500[ ]
      -S10 Pickup Truck - $1,600[ ]
      -Payments on [Wife's] car (27 months) - $12,300[ ]
      -Black Dodge Truck - $5,500[ ]
      -White F250 Ford Truck - $6,000[ ]
      -Insurance payments to Shield - $1,000[ ]
      -Paid off Mitsubishi to buy a house - $9,000[ ]
      -Payment of Collection Agency bill - $500[ ]
      -Four (4) payments on foreclosed home - $8,000[ ]
      -Internal Revenue Service payment (after [Husband] falsified a job) - $3,200[ ]
      -Unemployment overpayment to [Husband] - $4,000[ ] (based on falsification)

Although it is acknowledged that part of these monies loaned to the parties could possibly be the responsibility of [Wife], it is represented that any contribution at all by [Husband] to support his contention that he has an equitable ownership interest in the real property and titled to me [and] my daughter would be greatly outweighed by these loans. It was understood and agreed between myself and [Husband and Wife] that these loans would be paid back to me through the years.

3

It is further my position that [*Husband*] *in fact owes these monies to me at present and has made no effort to pay them whatsoever.* . . . [Husband] has made no significant contribution to the maintenance, preservation or improvement of the value of the real property since its purchase.

[Husband] has in no way contributed to me, anything in the way of the rental value of this property during the timeframe that he has lived there, including, but not limited to the timeframe after which he took sole possession of the property, during the pendency of this divorce.

WHEREFORE, I assert, as a [cross-]claim against [Husband], that he be divested of any interest in the real property whatsoever *and/or in the alternative, that I have a claim against* [*Husband*] *for repayment of all monies loaned to him* as stated hereinabove, along with costs and attorney fees necessary to preserve my interest.

(Numbering in original omitted; emphasis added.) Husband filed an answer to the cross-claim, admitting "that McKeel provided financial assistance and/or gifts to the parties throughout the course of the marriage." He generally denied that Wife's one-half interest in the West Lake residence was her separate property and that he owed any debt to McKeel.

On December 23, 2013, the trial court entered an agreed order reflecting the parties' agreement to a temporary parenting plan setting forth a co-parenting schedule giving Husband and Wife roughly equal co-parenting time. The trial took place on March 10 and April 8, 2014. At trial, the parties generally agreed that beginning in tax year 2007 and continuing through 2011, Husband and Wife tendered their federal income tax refund to McKeel.[1] Husband testified that these monies were tendered to McKeel in accordance with an alleged oral agreement that Husband and Wife would purchase the West Lake residence from McKeel, continuing to pay him the amount of their tax returns until they had paid the purchase price of $119,400. Both McKeel and Wife denied any such agreement and further objected to Husband's testimony on the grounds that any oral agreement to sell the real property is unenforceable in Tennessee. *See* Tenn. Code Ann. § 29-2-101(a) (2012) ("No action shall be brought . . . [u]pon any contract for the sale of

---

[1] There was some disagreement among the parties on the amount that McKeel received from the first income tax refund in 2007. The trial court credited McKeel's testimony on this issue, finding that Husband and Wife tendered only $2,000 of the total refund amount of $6,333 to McKeel.

lands . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith.").

The trial court entered its final divorce judgment on May 2, 2013. The court adopted Husband's proposed parenting plan, which designated him primary residential parent and gave the parties "essentially equal" parenting time with the children. The court ordered Husband to pay child support in the amount of $458 per month in accordance with the Child Support Guidelines. The amount of child support is not at issue on appeal. Although the trial court did not explicitly find the West Lake residence to be Wife's separate property, it is clear from the order that it implicitly so found. The court found that McKeel paid for all of the expenses associated with maintenance and upkeep of the property, repairs, insurance, taxes, and any other expenses relative to the West Lake residence. There was no evidence presented that the property had increased in value from the time of purchase to the time of trial. Consequently, the trial court awarded Wife a one-half interest in the West Lake residence, and held that Husband had no interest in the property.

In support of its award to McKeel, the trial court found and held as follows:

> Ultimately, the court finds that the entirety of the tax refund[s] tendered by Husband and Wife to Mr. McKeel was in fact for payments for . . . various large sums of money that Mr. McKeel loaned to Husband and/or Wife during the course of the marriage. While the court does find that Husband and Wife paid apparently approximately $15,000[ ] from 2007 to the present date, the court finds that this is only a very small portion of the funds actually owed to Mr. McKeel for various loans or vehicles provided by Mr. McKeel to Husband and Wife. Some of the items that Mr. McKeel paid for were obviously for the use and benefit of both Husband and Wife. However, the court finds that the black Dodge Truck and the Ford F250 were for the sole use and benefit of Husband, and therefore Husband is solely responsible for the payment of these debts. The court finds that he has paid nothing to Mr. McKeel in any way related to these debts. . . . It is obvious to the court . . . that the funds expended by Mr. McKeel for both cars and the trucks were not intended to be gifts and are in fact loans. There is also no question in the court's mind that Husband knew that he was responsible to pay for the items.

5

[D]uring the course of this marriage, Mr. McKeel either gave or loaned to Husband or Wife in excess of $70,000[ ], not including the payment for the house already discussed above. The court finds that during the course of the marriage that Mr. McKeel purchased, on numerous occasions, or assisted in purchasing on numerous occasions, vehicles specifically for the use and benefit of Husband.

* * *

The court finds that there is no question, based upon Husband's own admission in his letter, that there was some agreement for Husband to pay for the various cars. The court finds that there is no question that Mr. McKeel purchased Husband a black Dodge Truck for the amount of $5,500[ ], and that this black Dodge Truck was later used by Husband as a down payment for a white F250 Ford Pickup Truck with any additional payment of $6,000[ ] paid by Mr. McKeel. The court finds that this $11,500[ ] was paid by Mr. McKeel for vehicles for the use and benefit of Husband. . . . With regard to the $11,500[ ], the court finds that Husband owes this $11,500[ ] to Mr. McKeel, and that this debt shall be paid to Mr. McKeel.

("Mr. Merkel" and "Mrs. Merkel" in original replaced with "Husband" and "Wife" throughout.) The trial court also awarded McKeel a judgment against Husband for $183.45 for a utility bill expense incurred by Husband while he was living by himself at the West Lake residence before trial, and $3,660 that McKeel gave to Husband to pay a debt owed by Husband to the Tennessee Department of Labor. The total award against Husband in favor of McKeel was $15,343.45.

All three of the parties filed a motion to alter or amend the trial court's judgment. McKeel argued that the court erred by not awarding him rent in the amount of $800 per month against Husband for the time period between July 2013 and February 2014, when Husband was living by himself at the West Lake residence free of charge. The trial court denied McKeel's motion. Wife argued that the trial court erred by naming Husband primary residential parent and by ordering that Chris Allen was not allowed to be in the presence of the children. She also asked for the child support award to be made

6

retroactive beginning July 2013, when the parties separated. Husband argued that the court erred by granting McKeel a judgment when, according to him, the issue of any separate debt owed by him to McKeel was not properly before the court. He also asserted that the trial court should have classified Wife's one-half interest in the West Lake residence as marital property. The trial court declined to alter or amend its judgment other than to declare Wife to be primary residential parent of the parties' daughter, stating that "the court wishes to reiterate that both parents have exactly equal authority as it relates to both children, and both parents shall have exactly equal parenting time as it relates to both children." Regarding child support, the trial court clarified that "the support shall be retroactive and payable to [Wife] beginning August 1, 2013 (the date of the filing of the complaint for divorce) through May of 2014, in the amount of $458[ ] per month." Husband timely filed a notice of appeal.

## II.

Husband raises the following issues on appeal:

> 1. Whether the trial court erred in awarding McKeel, a third party defendant in this divorce action, a judgment against him.
>
> 2. Whether the trial court erred in its division of the marital estate.
>
> 3. Whether the trial court erred in making the order of child support retroactive to the date of the complaint.
>
> 4. Whether he is entitled to an award of attorney's fees on appeal.

Wife raises this additional issue:

> Whether the trial court erred in prohibiting Chris Allen from being in the presence of the children.

## III.

Our review of this non-jury case is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings, a presumption we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). We review the trial court's conclusions of law de novo with no

presumption of correctness. ***Oakes v. Oakes***, 235 S.W.3d 152, 156 (Tenn. Ct. App. 2007).

**IV.**

**A.**

In support of his argument that the trial court erred in awarding McKeel a judgment against him, Husband points out that the trial court's order reflecting the agreement of Husband and Wife to allow joinder of McKeel as an indispensible third party states that he is joined "for the *sole purpose of adjudicating any and all rights to the real property* by deed titled in the name of Terry McKeel and [Wife]." (Emphasis added.) However, *after* this agreed order was entered, McKeel filed an answer and cross-claim, quoted at length above, which clearly and unequivocally set forth his claim "for repayment of all monies loaned to" Husband. Husband filed an answer generally denying that he owed any debt to McKeel. He did not move to strike or object to McKeel's claim as beyond the scope of the agreed order. As the trial court correctly found, the issue of McKeel's loans to Husband was fully litigated at trial. Husband had the opportunity to testify and present evidence without limitation regarding the scope and amount of loans from McKeel to him individually, if any. In his trial testimony, Husband admitted that he owed McKeel the amounts awarded by the trial court, stating:

> Q: Then you found the black Dodge truck and he loaned you $5,500 to buy that, right? Loaned?
>
> A: No, sir.
>
> Q: Okay. Page 23, Line 13 [of Husband's deposition:] You found a black Dodge truck you wanted and that he loaned you $5,500 to buy it; is that accurate? Answer: Yes. We had the trailer. My truck would pull the trailer.
>
> A: Okay.
>
> Q: Okay. Then he loaned you $6,000 and you traded the black truck plus his $6,000 to get this white Ford F-250 we've been discussing here recently?
>
> A: Yes.
>
> Q: And you didn't put up any of that $6,000, did you?

8

A: No, sir.

As authority supporting his argument, Husband cites 27A C.J.S. *Divorce* § 176, which states that "[a]s a general rule, divorce actions are for the exclusive use of the parties to the divorce itself, and third party intervention is not to be allowed," and 24 Am.Jur.2d *Divorce and Separation* § 211, which provides that "[a]lthough courts are not authorized in divorce proceedings to order disposition of property interests of third persons who are not parties to the proceeding, intervention in a divorce action is permitted where the party seeking to intervene has a legally enforceable interest in the proceeding." (Footnote omitted.) While we do not necessarily disagree with these general propositions, we do not think they apply here to preclude the trial court's consideration of an issue that was clearly pleaded and tried. We note that the Corpus Juris Secundum further states that "a third person cannot intervene in a divorce suit for the purpose of opposing the divorce, but intervention may be allowed where it is necessary to secure justice, and third persons whose property interests may be adversely affected may intervene to protect their rights." 27A C.J.S. *Divorce* § 176. Moreover, in this action, McKeel was brought into the case as intervenor by agreement of both parties. We hold that the trial court properly exercised its jurisdiction, and did not err in its award against Husband in favor of McKeel under the circumstances.

**B.**

Husband's argument regarding the division of the marital estate focuses on the West Lake residence – he asserts that he should have been awarded one-half of Wife's one-half interest in the property, and also that the trial court should have credited his testimony that the monies paid to McKeel during the marriage were payments under an oral agreement to purchase the property. As this Court has observed,

> Before dividing the marital estate in a divorce proceeding, the trial court first must classify the parties' property as either marital or separate property because only marital property is subject to the trial court's powers of equitable distribution. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. App. 1995); *Brown v. Brown*, 913 S.W.2d 163, 166 (Tenn. App. 1994); *accord Burns v. Burns*, No. 01A01–9705–CH–00218, 1997 WL 691533, at \*2 (Tenn. App. Nov. 7, 1997). In classifying the parties' property as either marital or separate, the trial court is vested with wide discretion, and its decision is entitled to great weight on appeal.

*Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998); *see also Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007). The governing statute, Tenn. Code Ann. § 36-4-121(b)(2)(D) (2014) defines "separate property" as including "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent." "Accordingly, if the spouse can show that the property was a gift, the gift is his or her separate property, regardless of when it was acquired." *Dunlap*, 996 S.W.2d at 814.

In the present case, Husband did not dispute the fact that McKeel paid for the West Lake residence with cash from the bulk of his life savings,[2] at a time when Husband and Wife were separated. Husband did not present any evidence contradicting the testimony of McKeel and Wife that McKeel intended to make a gift of the one-half interest in the property to Wife. This is also indicated by his decision to place his name and Wife's name on the deed. Moreover, the evidence preponderates in favor of the trial court's finding that McKeel paid the expenses associated with the West Lake residence during the parties' marriage and while they lived there.

Tenn. Code Ann. § 36-4-121(b)(1)(B)(i) provides that marital property "includes income from, and any increase in the value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation." However, there is no evidence that the value of the West Lake residence increased from the time of purchase until the time of trial. The trial court found

> no proof or evidence as to any increase in value to the home from the time that [Husband] moved in until now, and the court has no evidence as to anything that [Husband] has done that has in any way enhanced or increased, or even maintained, the value of the home.

Under Tenn. Code Ann. § 36-4-121(b), the one-half interest in the West Lake residence was properly classified as Wife's separate property, and the trial court correctly held that Husband had no interest in the property under the circumstances.

Regarding Husband's assertion of an oral agreement to buy the property from McKeel, even putting aside, arguendo, Husband's serious problem with the statute of frauds,[3] this issue largely turns on the trial court's assessment of credibility, which, as explicitly stated by the court, does not favor Husband:

---

[2] When McKeel was asked whether, after he bought the house, "Did that leave any, as you put it, life savings?" he answered, "No."

[3] The trial court did not make a ruling on the issue of whether the statute of frauds

> Based upon the course of dealings between these parties through the years of this marriage, and based upon [Husband's] own admissions in his own handwritten letter (trial exhibit #25), the court finds his testimony related to financial matters not to be credible, and in fact the court finds it shockingly incredible, given how much Mr. McKeel did for both [Husband and Wife] throughout the entirety of this marriage. His own handwritten letter . . . contradicts his sworn testimony at trial, as well as his statements made in his deposition testimony. . . . Based upon [Husband's] lack of credibility concerning financial matters, the court has great concern about [Husband's] overall credibility in his testimony during the course of this trial. The court does not find [Husband's] argument at all compelling regarding financial issues.

"When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings." **Collins v. Howmet Corp.**, 970 S.W.2d 941, 943 (Tenn. 1998).

## C.

Husband supports his argument that the trial court erred in making the child support award retroactive to the date of the complaint by relying upon **Hopkins v. Hopkins**, 152 S.W.3d 447 (Tenn. 2004). Husband cites **Hopkins** for the proposition that "under the Child Support Guidelines, only the primary residential parent may be awarded child support." **Id.** at 450. He argues that he was "acting and/or assumed the role of" primary residential parent "at least until the entry of" the trial court's order adopting the agreed temporary parenting plan on December 23, 2013. In 2004, when **Hopkins** was decided, the Child Support Guidelines had not yet been amended to adopt the "income shares approach."[4] The Guidelines were amended and took effect on January 18, 2005, see **Taylor v. Fezell**, 158 S.W.3d 352, 355 n.2 (Tenn. 2005), and now provide that:

> Due to the method for calculation of the adjustment, it is anticipated, in a case where the PRP [primary residential

foreclosed Husband's argument that there was an oral agreement to sell the real property.

[4] The Supreme Court in **Hopkins** expressly recognized this in footnote 2 of the opinion, observing that "proposed amendments to the Child Support Guidelines allow for a comparative analysis of the parties' incomes in determining child support." 152 S.W.3d at 449 n.2.

parent] has greater income than the ARP [alternate residential parent] and the ARP has a high level of parenting time with the child, that support may be due from the PRP to the ARP to assist with the expenses of the children during the times spent with the ARP. In this circumstance, a support payment from the PRP to the ARP is allowed.

Tenn. Comp. R. & Regs. 1240-02-04-.04(7)(f).

Moreover, the trial court's divorce judgment following the trial provides the initial determination of child support. The trial court's December 23, 2013 order reflects only the parties' agreement of a day-to-day co-parenting schedule pending trial, and it states that the temporary parenting plan

> is entered without any presumption of correctness or in any way prejudicial to the rights of either party to assert other positions[;] likewise, *all matters not addressed therein such as the designation of primary residential parent*, the day count, decision-making, *child support*, and all other matters *are reserved to the* [*t*]*rial* of this cause.

(Emphasis added.) Regarding retroactive child support, the Guidelines mandate as follows in pertinent part:

> (1) Unless the rebuttal provisions of Tennessee Code Annotated §§ 36-2-311(a)(11) or 36-5-101(e) have been established by clear and convincing evidence provided to the tribunal, then, in cases in which initial support is being set, a judgment must be entered to include an amount of monthly support due up to the date that an order for current support is entered:
>
> \*        \*        \*
>
> (b) From the date:
>
> 1. Of separation of the parties in a divorce or in an annulment[.]

12

Tenn. Comp. R. & Regs. 1240-02-04-.06(1)(b). Thus, the Child Support Guidelines plainly contradict Husband's assertion that the trial court erred in making the award retroactive.[5] We affirm the trial court's child support award to Wife.

**D.**

The parenting plan adopted and incorporated by the court provides that "Chris Allen, Russell Bean and Billy Watkins shall never and at no time be around, in the presence of or in contact with the children." Wife challenges this prohibition as regards Chris Allen, a friend of hers according to her testimony. "[T]he general rule is that 'the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge,' " *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)), and our review of a trial court's decision in this regard is subject to an abuse of discretion standard. *Suttles*, 748 S.W.2d at 429; *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

We have reviewed the record in a search for testimonial references to Allen, and have found no evidence that could be characterized as negative, or that would support a conclusion that he should not be around the children. Indeed, Allen was scarcely mentioned at all at trial. Wife testified that he is a friend from high school whom she spent time with, but that they were not dating. When asked on cross-examination if she knew "anything about Mr. Allen's criminal history," she replied, "I know that he has a clean background. I've asked him to show me his criminal history, and he did," and no further questions along this line were asked of her. Husband testified, "I don't know anything of their history relationship other than just seeing, observing myself them together or . . . I have phone records from Verizon where, you know, there was phone conversations through all night long, you know, prior to . . . her filing for divorce." We find no evidence in the record supporting the trial court's order prohibiting Allen from being in the presence of the children, and consequently modify the permanent parenting plan to remove this provision.

**E.**

In light of our decisions in Wife's favor on appeal, we decline Husband's request to award his attorney's fees on appeal.

---

[5] As can be seen, the Guidelines also require the child support award to be set retroactive to the date of separation, which in this case was July 11, 2013. Wife filed suit approximately three weeks later on August 1. She does not argue or raise the issue on appeal that the trial court erred by not including these three weeks in her retroactive child support award, so we decline to disturb the trial court's ruling setting support retroactive to August 1, 2013.

13

**V.**

The judgment of the trial court is affirmed as modified. Costs on appeal are assessed to the appellant, Carl Shane Merkel. This case is remanded to the trial court for enforcement of the trial court's judgment as modified herein, and for collection of costs assessed below, pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE

14